**INDUSTRIAL INDEMNITY COMPANY, Plaintiff,**

v.

**Wayne ANDERSON, et al., Defendants.**

**INDUSTRIAL INDEMNITY COMPANY, Plaintiff,**

v.

**Robert ASCHE, et al., Defendants.**

**Civ. Nos. A3–85–193, A3–85–199.**

United States District Court,
D. North Dakota, Southeastern Division.

July 1, 1988.

Jack G. Marcil, Fargo, N.D., Michael D. Nelson, West Fargo, N.D., for plaintiff.

Kapsner & Smith, Sheldon A. Smith, Bismarck, N.D., Fluegel, Anderson & Dalager, Michael M. Fluegel & Gerald J. Seibel, Morris, Minn., for Wayne Anderson, James Briks, Jerry Briks, dba Briks Brothers, Douglas Erickson, Gary M. Haugrud, Earl Milbrath, Lars Sivertson, Merrill Sivertson, aka Merril Sivertson, Leo J. Zorn, Phil Brademeyer, Dennis Docktor, Stan Hokana

and John Hokana, d/b/a Hokana Farms, and Arnold Laugsand, McGee Law Firm.

Raymond Zajac, Lidgerwood, N.D., pro se.

Ross E. Olson, Bottineau, N.D., for Virgil Mortenson and Marlin Cote.

Emery A. Carbonneau, Bottineau, N.D., pro se.

R.B. McLarnan, Moorhead, Minn., for Pringle & Herigstad Law Firm on appeal of denial of motion to quash supboena.

David A. Overboe, West Fargo, N.D., pro se.

Marlin Cote, Bottineau, N.D., pro se.

Virgil Mortenson, Bottineau, N.D., pro se.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

FACTS:

The facts of this case, as previously set out it this court's decision dated November 30, 1987, are as follows:

These cases represent two of ten actions filed in this court involving the obligation of over 1,000 farmers to deliver grain pursuant to a "Grower's Grain Supply Agreement" entered into with American Energy, Inc. Pursuant to a court order dated April 22, 1986, civil numbers A3–85–193, A3–85–199, and A3–85–200 were consolidated. A2–85–200 has since been closed. The remaining seven actions were also consolidated, but proceedings in those cases have been stayed pending disposition of civil numbers A3–85–193, A3–85–199, and A3–85–200.

In 1978 American Energy, Inc. (AEI) was organized as a North Dakota Cooperative to operate a facility for the processing of grain into anhydrous ethyl alcohol and related by-products. The facility, which AEI was going to either construct or lease, was to be located at Hankinson, North Dakota.

In order to become a member of AEI, an individual had to be a farmer and contribute to the equity of AEI. A membership in AEI entitled the farmer to subscribe his crops to AEI in amounts that varied according the farmer's equity contribution. In June of 1981, AEI was still in the developmental stage. The officers and directors distributed offering circulars to farmers in North Dakota, South Dakota, and Minnesota. The offering circular offered a "Grower's Grain Supply Agreement" (Agreement) to members of the cooperative. It also offered additional subscriptions of equity capital contributions to farmers who desired to become members, and to members who desired to increase the amount of their equity contribution. The offering circular contained a section entitled "Summary of Grower's Agreement," which explained various provisions of the Agreement.

By 1982 approximately 1,100 farmers had become members of AEI and had executed Agreements.

On August 9, 1982, AEI borrowed two million five hundred thousand dollars ($2,500,000) from Beneficial Finance Leasing Corporation (Beneficial) and executed a promissory note for that amount. The note was due December 1, 1983. As security for the note, AEI assigned the Agreements to Beneficial. AEI also obtained a contract repudiation policy from Industrial Indemnity Company (Industrial Indemnity). The policy guaranteed repayment of the loan in the event AEI failed to do so.

AEI did not repay the loan on the due date. On April 27, 1984, Beneficial, as assignee of the Agreements, served notice on the farmers who had executed the Agreements that they were to commence delivery of the minimum required amount of grain no later than June 18, 1984. The alcohol processing facility had not been constructed and the Farmers Mill & Elevator Company at Hankinson, North Dakota, was designated as the delivery site. Under the terms of the Agreements, the farmers would not receive payment for the grain. All of the farmers involved refused to comply and, as a result, Beneficial made demand upon Industrial Indemnity to satisfy AEI's loan obligation under the terms of the contract repudiation policy. Industrial Indemnity satisfied AEI's loan obligation on August 6, 1984. In return, Beneficial

assigned AEI's promissory note and the Agreements to Industrial Indemnity.

On November 14, 1986, AEI filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code, Title 11 U.S.C., and petitioned for permission to abandon the Agreements and to enter into a settlement with Industrial Indemnity. An order approving the petition was entered effective August 13, 1985. Industrial Indemnity subsequently commenced ten identical actions against over 1000 signatories to the Agreements seeking specific performance or damages.

Approximately 400 defendants remain in these ten actions. The other 600 or so defendants have settled their disputes with Industrial Indemnity.

## PROCEDURAL HISTORY

In an order dated October 2, 1986, this court held that section 41–09–19 of the North Dakota Century Code [1] was applicable to the present action. As a result, this court concluded that if Industrial Indemnity took its assignment of rights under the agreement for value, in good faith, and without notice of any claim or defense, the Defendants may not assert against Industrial Indemnity any defense except those which may be asserted against a holder in due course under section 41–03–35.

Thereafter, on June 1, 1987, Industrial Indemnity filed a motion for summary judgment along with numerous affidavits and depositions in support of its motion. Due to a discovery dispute that was being appealed from the Magistrate to this court, the court granted all the Defendants an extension of time to file their responses to the Plaintiff's motion for summary judgment. Based on the court's order of July 9, 1987, and other developments in the case, the Defendants' response to the motion for summary judgment was due on approximately October 28, 1987.

As of December 1, 1987, the Defendants had failed to respond to the motion. Thus, in an order dated December 1, 1987, the court held that summary judgment on the issue of liability was appropriate based on the fact that the Plaintiff had established the absence of any genuine issue of fact and the Defendants' failure to come forward with specific facts establishing the existence of any facts in dispute. Based on the affidavits and other pleadings submitted by Industrial Indemnity the court concluded that it took its assignment of the Agreements for value, without notice of any claims or defenses, and in good faith, and thus accorded it the status of a holder in due course to which only real defenses could be asserted.

Shortly thereafter, several of the Defendants moved the court for reconsideration of its December 1, 1987, order. In support of their motion the Defendants contended that a miscommunication with the Magistrate's office led them to believe that they had an indefinite amount of time in which to respond to the motion for summary judgment. As a result no response was filed prior to the court's order. To avoid any injustice to the Defendants, the court issued an order on December 18, 1987, staying its December 1, 1987, decision granting summary judgment to Industrial Indemnity on the issue of liability and held in abeyance the motion for reconsideration of that order. On January 11, 1988, the Magistrate entered an order extending the discovery deadline to March 1, 1988, and granted the Defendants until March 22, 1988, to respond to Industrial Indemnity's motion for summary judgment.

Out of the foregoing chaos, the court has pending before it a motion to reconsider its order of December 1, 1987, which granted

---

1. Section 41–09–19 (UCC 9–206) of the North Dakota Century Code provides:

  1. Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith, and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the chapter on commercial paper (chapter 41–03. . . .

. . . .

N.D.Cent.Code § 41–09–19 (1983).

summary judgment to Industrial Indemnity on the issue of liability. The court will grant the motion for reconsideration, but for reasons herein stated will grant the motion for summary judgment.

ANALYSIS

■ In their brief in response to the motion for summary judgment, the Defendants first suggest that summary judgment is not appropriate in the instant case because they have asserted the defense of unconscionability which is a question of fact that can only be decided after the parties have had an opportunity to present evidence on the issue. This court does not, nor has it, disagreed with the Defendants' contention. As the court noted, however, in its order dated October 2, 1986, the defense of unconscionability is not a valid defense against Industrial Indemnity if it establishes that it took its assignment in good faith, for value, and without notice of any claims or defenses; or as the transferee of the assignment from Beneficial, if Beneficial took its assignment for value, in good faith, and without notice of any claims or defenses to the Agreements. If it did not, then the Defendants will be able to assert the defense of unconscionability, otherwise the defense is not valid.

The only question then is whether Industrial Indemnity or Beneficial took the assignment of the Growers Agreements for value, in good faith, and without notice of any claims or defenses. If Industrial Indemnity can prove that their taking of the assignment satisfied these requirements or that Beneficial has, then it is entitled to the protections of a holder in due course as set forth in section 41-09-19 of the North Dakota Century Code.

The Defendants next attempt to re-litigate the issue of whether section 41-09-19 is applicable to the instant case. This issue was resolved on October 2, 1986, at which time the court determined that it was applicable. No motion to reconsider that order was filed by the Defendants. The court will not allow the Defendants after almost two years to re-argue that issue. In all events the court does find, based on its October 2, 1986, memorandum and order, that section 41-09-19 is applicable to the instant action.

Section 9-206(1) of the Uniform Commercial Code, which is codified at section 41-09-19 of the North Dakota Century Code, was designed to encourage the supply of credit by insulating the institutional lender from lawsuits and personal defenses that would be asserted against the lender without the protections afforded it under section 9-206(1). *See Chemical Bank v. Rinden Professional Assn.,* 126 N.H. 688, 498 A.2d 706 (1985). Without these protections lending institutions would be hesitant to enter into loan agreements. The same rationale is applicable in this case to Industrial Indemnity.

■ The assignment of an instrument vests in the transferee the same rights the transferrer had therein. *See First National Bank of Minot v. MacDonald Construction Co.,* 137 N.W.2d 667, 672 (N.D.1965). Accordingly, as the transferee of the Growers Agreements, Industrial Indemnity is entitled to the same rights that Beneficial acquired at the time it received the assignment from AEI. Thus the only defenses that can be assert against Industrial Indemnity are those defenses that could have been asserted against Beneficial—unless of course Industrial Indemnity, acquired in its own name, rights greater than those transferred.

The first inquiry then is whether Beneficial took its assignment on August 9, 1982, for value, in good faith, and without notice of any claims or defenses to the Growers Agreements. It is not disputed that Beneficial gave value for the assignments of the Growers Agreements when it loaned AEI $2,500,000.00. The Defendants contend, however, that there is at a minimum, genuine issues of material fact on the question of notice and good faith precluding summary disposition of the issue of liability on the Growers Agreements.

Summary judgment is only appropriate where the record discloses no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). In a summary judgment motion

the facts must be viewed in the light most favorable to the party opposing the motion, but where the moving party has met its initial burden of production with credible evidence that would entitle it to a directed verdict, summary judgment is appropriate unless the opposing party produces evidence in contravention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan's dissenting opinion explaining the mechanics of considering a motion for summary judgment as employed by the majority). If the moving party submits evidentiary material which convincingly shows that there is no genuine issue of material fact, the opposing party must come forward with specific facts that demonstrate a genuine issue for trial. *Elbe v. Yankton Independent School Dist. No. 1*, 714 F.2d 848 (8th Cir.1983).

In assessing whether the nonmoving party has come forward with specific facts to demonstrate a genuine issue of fact the Supreme Court has stated that there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court's main concern is whether the evidence submitted presents a sufficient disagreement as to the material facts which would require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law entitling it to a direct verdict. *Id.* 106 S.Ct. at 2512. In the instant case, if Industrial Indemnity satisfies its initial burden of production, the Defendants, to survive the motion, must present evidence upon which a jury might return a verdict in its favor. *Id.* at 2514.

As the court found in its December 1, 1987, decision, Industrial Indemnity has submitted affidavits in support of its motion for summary judgment which satisfies its initial burden of production on the issue of whether Beneficial took the assignments in good faith and without notice of any claims or defenses. Those facts which support Industrial Indemnity's motion for summary judgment, which do not appear to be contested by the Defendants, are as follows:

Beneficial did not play any role in the development or creation of AEI. Nor did it play any role in the development of the offering circulars or Agreements. Further, it did not play any part in the distribution of those documents or in encouraging any of the defendants to enter into the Agreements. In fact, the evidence indicates that Beneficial's contact with AEI or its agents did not occur until after all the Agreements had been executed. Beneficial had no contacts or other business with AEI prior to AEI's attempt to obtain financing from Beneficial.

No officers or directors of "Beneficial" were on the board of AEI, or members or AEI, nor did any of the members of AEI serve as officers, directors, or employees of "Beneficial".

Several officers of "Beneficial", who were instrumental in working out the terms of the financing agreement for "Beneficial", have submitted affidavits which indicate that from the time they became involved with AEI, they were led to believe that the grain alcohol processing facility would be built and that if, for whatever reason, it was not built the growers would still comply with the Agreements pursuant to the terms of the unconditional obligation clause of the Agreements. The officers further indicate that at no time prior to the execution of the closing documents for the loan were they informed by any officer, director or member of AEI, farmers, or anyone else involved, of any possible claims or defenses that may exist or have been asserted against the Agreements.

Finally, the officers of "Beneficial" indicate that at the time of the execution of the closing documents, they were aware that prior to the closing of the loan agreement, AEI's attorney, Herbert Meschke, was required to provide an opinion letter to Beneficial vouching as to the validity and binding nature of the Agreements. In connection therewith, Herbert Meschke did submit a letter to Beneficial indicating that the

Agreements had been duly executed and delivered by the AEI, and each constituted a legal, valid and binding obligation of AEI, enforceable against AEI in accordance with its terms. No where in his letter does Mr. Meschke indicate or suggest that possible defenses or claims have been asserted by any of the farmers to the Agreements.

Accordingly, it is clear that Industrial Indemnity has satisfied its initial burden of production on the issue of Beneficial's lack of notice of any claims or defenses and good faith at the time the Agreements were assigned to it. The pleadings in support of Industrial Indemnity's motion for summary judgment clearly establish that Beneficial could not have known, nor had reason to know of any claims or defenses that may have existed. Unless the Defendants come forth with evidence indicating that there are issues of fact in dispute which would require the case to be submitted to a jury, summary judgment is appropriate. In their response to the motion for summary judgment, the Defendants point to notes of conversations which were conducted between attorneys and other persons for the various parties indicating that several individuals had some concerns, including; questions regarding the enforcement of security under the Agreements, Beneficial's ability to enforce the Agreements, concerns over the liquidated damages clause, and concerns that an attorney for Beneficial had over the enforceability of the Agreements.

These questions or concerns cited by the Defendants do not, however, controvert Industrial Indemnity's evidence that Beneficial took its assignment in good faith and without notice of any claim or defense. The fact that parties or attorneys may have questions or concerns themselves regarding enforceability of a contract does not automatically lead to the conclusion that Beneficial had notice of any claims or defenses to the Agreements. In every contract entered, parties thereto should be concerned with the enforceability of the agreement. An unenforceable agreement is of no value to the contracting parties. Parties to an agreement enter into a final contract once they are satisfied that their

initial concerns have been resolved. Likewise, in the instant case, the fact that the parties entered into the financing agreement indicates that any questions or concerns that they initially had were resolved during further discussions and negotiations between the various parties.

Based on the foregoing facts and circumstances the court finds that Industrial Indemnity has met its initial burden of production with credible evidence which would entitle it to a directed verdict as to the issue of Beneficial's good faith and lack of notice of claims or defenses at the time the Agreements were assigned to it. The court further finds that the Defendants have failed to submit sufficient evidence which demonstrates a genuine issue of fact upon which a jury could return a verdict in their favor. Therefore, it will be the order of the court that summary judgment be entered on the issue of liability for Industrial Indemnity.

In this court's order of December 1, 1987, this court concluded, due to the Defendant's failure to produce any evidence, that Industrial Indemnity, in its own right, took the assignment for value, in good faith, and without notice of claims or defenses. Based on the preceding discussion and conclusion the court does not decide that issue on reconsideration. Rather, the court finds that as the transferee of Beneficial's rights, Industrial Indemnity is entitled to the protections under section 41–09–19 of the North Dakota Century Code. Consequently only those defenses enumerated in section 41–03–35 may be asserted against Industrial Indemnity in the present action. As determined in this court's order of December 1, 1987, however, none of those defenses are available to the Defendants.

After reconsideration of the December 1, 1987, order, this court finds that summary judgment was appropriate but for those reasons stated herein. Thus for purposes of clarity, this court will vacate the order of December 1, 1987. It is hereby ORDERED that:

(1) THE COURT ORDER ENTERED ON DECEMBER 1, 1987, BE VACATED.

(2) SUMMARY JUDGMENT BE ENTERED IN FAVOR OF INDUSTRIAL INDEMNITY ON THE ISSUE OF LIABILITY FOR REASONS STATED HEREIN.