MOBILE DISCOUNT CORPORATION, Appellant, v. GEORGE R. PRICE and DORIS J. PRICE, Respondents.

No. 13845

January 20, 1983                                    656 P.2d 851

*Cal J. Potter, III,* Las Vegas, for Appellant.

*Monte J. Morris,* Henderson, for Respondents.

## OPINION

*Per Curiam:*

On May 4, 1970, respondents George and Doris Price purchased a mobile home on a retail installment contract from E–Z Livin' Mobile Home Sales, Inc. (E–Z Livin'). On the very same day, E–Z Livin' assigned the contract to Western Coach who in turn assigned it to Fidelity Acceptance Corporation. After several other mesne assignments, the contract was finally assigned to appellant Mobile Discount Corporation, Inc. (Mobile) on April 9, 1980.

Pursuant to the installment contract, the Prices made twelve consecutive payments of $105 each and none thereafter, leaving a balance due of $11,334.40. As a consequence of the default in payment, E–Z Livin' repossessed the mobile home sometime after June of 1971 and filed suit against the Prices on January 7, 1972, for monies E–Z Livin' had paid on its guarantee and for repossession costs. When the matter came to trial, the complaint was dismissed without prejudice. No appeal was taken nor was any further action commenced against the Prices until Mobile filed its complaint in the present action on June 12, 1980, some eight years after the dismissal of E–Z Livin's complaint. With this background in mind, the facts giving rise to the instant case are as detailed below.

After appellant Mobile was assigned the contract on April 8, 1980, it immediately published and sent notice to the Prices that as a result of the latters' default, Mobile would be selling the mobile home at auction pursuant to the Uniform Commercial Code. The sale took place on April 23, 1980, and Mobile received $7,381 from the highest bidder. The proceeds of the sale were credited to the balance owing on the mobile home of $11,334.40, leaving a deficiency balance of $3,953.40. Mobile

then filed suit against the Prices on June 12, 1980, to recover this deficiency.[1]

In the process of litigation, the Prices filed a cross motion for dismissal based upon one or all of the following grounds: (1) res judicata; (2) statute of limitations; and (3) laches. The district court granted the Prices' motion to dismiss without specifying the grounds which prompted the dismissal. Under the specific facts of this case, we conclude that the district court properly dismissed the complaint on the ground that the statute of limitations had expired. Accordingly, we affirm.

In a secured transaction contract, a default occurs when a debtor fails to meet his or her monetary obligations. Boudreau v. Borg-Warner Acceptance Corp., 616 F.2d 1077 (9th Cir. 1980); Whisenhunt v. Allen Parker Co., 168 S.E.2d 827 (Ga.App. 1969). Therefore, it is quite clear the Prices defaulted in 1971 when they failed to make any further payments on their retail installment contract. Having defaulted, the cause of action accrued at that time because under the UCC provisions dealing with the statute of limitations "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." NRS 104.2725. Nevertheless, appellant contends that Western Coach continued to make the delinquent interest payments through March of 1980; therefore, it is argued that these payments tolled the statute of limitations until March of 1980 when Western Coach refused to continue to make the delinquent interest payments. We disagree.

As a general rule, the payment of interest on a debt will ordinarily take the debt out of the operation of the statute of limitations. Guild v. Meredith Village Sav. Bank, 639 F.2d 25 (1st Cir. 1980); 54 C.J.S. *Limitations of Actions,* § 323 (1948). The theory on which this rule is based is that the payment amounts to a voluntary acknowledgement of the existence of the debt which raises an implied new promise to pay. *See* Hamilton v. Pearce, 547 P.2d 866 (Wash.App. 1976). In most instances, the payment of interest is made by the debtor. However, where the payment is made by a third party, as in the present case, it must be authorized by the debtor and under his direction. Jarnagin v. Ditus, 424 P.2d 265 (Kan. 1967); Caridas

---

[1]The record is silent as to the whereabouts and use of the mobile home during the eight plus years that elapsed from the time it was repossessed by E-Z Livin' until it was sold at auction by Mobile on April 23, 1980.

v. Dahl, 311 So.2d 551 (La.App. 1975). For example, in *Jarnagin* the court held:

> In order to effectively toll the statute, a part payment must have been voluntarily and deliberately made on the indebtedness in question by the debtor, or by someone at his direction, and under such circumstances as to amount to an acknowledgement of the debtor's existing liability on such obligation.

*Id.* at 270. *Accord,* Martindell v. Bodrero, 63 Cal.Rptr. 774 (Ct.App. 1967).

Here, Western Coach purportedly made the interest payments without the knowledge or consent of the debtors, the Prices. The Prices did not authorize Western Coach to make the interest payments nor did they manifest any willingness or intent to pay the debt in question. On these facts, we hold that the payment of interest by Western Coach did not toll the statute of limitations. We therefore affirm the decision of the district court in dismissing the complaint since the statute of limitations had expired.[2]

---

[2]This case is governed by the Uniform Commercial Code which provides: "An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." NRS 104.2725. Here the cause of action accrued in 1971 when the Prices discountinued paying on the contract. Consequently, the statute of limitations expired in 1975 in this particular action.