Merrimack
No. 84-098

CHEMICAL BANK

v.

RINDEN PROFESSIONAL ASSOCIATION

July 1, 1985

*Shaines, Madrigan & McEachern P.A.*, of Portsmouth (*Gregory D. Robbins* on the brief and orally), for the plaintiff.

*Rinden Professional Association*, of Concord (*Paul A. Rinden* on the brief and orally), for the defendant.

DOUGLAS, J. This case presents the issue whether the defendant, Rinden Professional Association (Rinden), validly waived its defenses against the plaintiff-assignee, Chemical Bank, upon the assignment of its lease-purchase agreement. We hold that the waiver was valid and affirm the judgment in favor of plaintiff.

On April 25, 1974, Rinden, a law firm in Concord, entered into a lease-purchase agreement with Intertel Communications Corporation (Intertel) for an office phone system for the defendant's place of business. Under the contract, Rinden was to pay Intertel $158.00

per month for 96 months. At the end of this period, Rinden had the option to purchase the equipment for $1.00.

Shortly thereafter, Rinden received a document executed by Intertel, which gave notice of an assignment to Chemical Bank of the right to receive payments from Rinden as provided for in the lease-purchase agreement. Also contained in the notice was a so-called "hell or high water" clause, the purpose of which was to waive as to the assignee any defenses Rinden might have against Intertel. The clause specifically stated that such defenses could still be raised against the assignor, Intertel. The waiver of defenses clause was required by Chemical Bank as a precondition of its purchase from Intertel of Rinden's contract. After reading it, John Satterfield, office manager of Rinden, signed the document on June 11, 1974.

After receiving the document signed by Satterfield on behalf of Rinden, Chemical Bank paid Intertel the sum of $8,804.39 and received from Intertel an assignment of the right to payment under the lease. Contractual duties, such as maintenance of the phone system, were not delegated, but remained with Intertel. Around June 18, 1974, Rinden received a letter from Chemical Bank informing it that the assignment had been completed and that Rinden was now obliged to make its payments to Chemical Bank.

Rinden made payments to Chemical Bank for nearly three years, until the phone system began to malfunction seriously in 1977. It notified Intertel of the problems and ceased payments. Rinden eventually replaced the phone system with that of another company.

Rinden refused to pay Chemical Bank, and litigation ensued. Intertel was made a third-party defendant by Rinden, but Intertel went into bankruptcy in 1979.

In October 1978, Chemical Bank filed a motion for summary judgment based on the waiver clause. This motion was denied by the Superior Court (*DiClerico*, J.) on September 1, 1979, on the ground that there was a single question of fact to be resolved; namely, whether or not Chemical Bank was an assignee for value, in good faith, and without notice of a claim or defense. In December 1979, Chemical Bank filed a request that the court schedule a hearing limited to that issue.

Rinden then filed a motion for summary judgment, which on the recommendation of the Master (*Walter L. Murphy*, Esq.) on May 11, 1981, was denied by the Superior Court (*Temple*, J.). The defendant then requested both a hearing on a second motion for summary judgment and postponement of the scheduled hearing on the merits.

The defendant's requests were granted, and a hearing was held on

the defendant's motion. The Master (*Charles T. Gallagher*, Esq.) recommended that the motion be denied and that the plaintiff be awarded $568.00 in attorney's fees, pursuant to Superior Court Rule 59, for the time and cost expended in defending against the motion. These recommendations were approved by the Superior Court (*Nadeau*, J.) on October 28, 1982.

A hearing on the merits was held on November 21, 1983. The Master (*Robert Carignan*, Esq.) found that the June 11, 1974, document from Intertel to Rinden contained a valid notice of assignment and waiver of defenses and that Chemical Bank is a holder in due course entitled to collect the balance of its payments from Rinden. This report was approved by the Superior Court (*Cann*, J.) on January 30, 1984. The master let stand the previous award of attorney's fees. The defendant appeals the decision, claiming error in the finding that the waiver of defenses clause is enforceable and in the award of $568.00 in attorney's fees.

■ We begin by noting that we will not overturn a master's findings and rulings "unless they are unsupported by the evidence or are erroneous as a matter of law." *Summit Electric, Inc. v. Pepin Brothers Const., Inc.*, 121 N.H. 203, 206, 427 A.2d 505, 507 (1981). In applying this standard, we will interpret Massachusetts law as provided in the lease-purchase agreement between Rinden and Intertel.

This case is governed by the Uniform Commercial Code (UCC) as enacted in Massachusetts. *See* Mass. Gen. Laws Ann. chapter 106. The version of the provision of article 9 of the UCC applicable to this case, Mass. Gen. Laws Ann. ch. 106, § 9-206(1), is entitled "Agreement Not to Assert Defenses Against Assignee; Modification of Sales Warrantees Where Security Agreement Exists" and reads:

> "Subject to any statute or decision which establishes a different rule for buyers of consumer goods, an agreement by a buyer that he will not assert against an assignee any claim or defense which he may have against the seller is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement."

For the reasons set out below, we hold that this provision governs the instant case and that its requirements for a valid waiver of defenses and claims against an assignee have been met.

■ Article 9 of the UCC applies in this case because the lease-purchase contract between Rinden and Intertel was a secured transaction under the Code. Under the terms of the contract, Rinden was to pay $158.00 per month for 96 months. At the end of that time, Rinden had the option to purchase the equipment for $1.00. A security interest is created where, upon compliance with the terms of the lease, the lessee has the option to purchase the goods for nominal consideration. MASS. GEN. LAWS ANN. ch. 106, § 1-201(37)(b); *see also* MASS. GEN. LAWS ANN. ch. 106, § 9-206(1) (Supp. 1983).

■■ Under Mass. Gen. Laws Ann. ch. 106, § 9-206(1), warranties contained in a commercial sales contract may be modified so that a buyer agrees not to assert defenses against an assignee of the contract. *Credit Alliance Corp. v. David O. Crump Sand and Fill,* 470 F. Supp. 489, 491 (S.D.N.Y. 1979). The requirements of a valid waiver are that there was an agreement by a buyer, who is not a consumer, to waive defenses against an assignee and that the assignment was made for value, in good faith, and without notice of a claim or defense. Additionally, under the terms of the contract in issue here, modification of it could only be by a "like signed agreement." We find that these requirements were met so that the defendant validly waived his defenses against Chemical Bank.

The master found that Rinden agreed to the waiver of defenses clause, and the evidence supports this view. An agreement is defined as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance. . . ." MASS. GEN. LAWS ANN. ch. 106, § 1-201(3).

Rinden argues that the June 11, 1974, letter from Intertel was only a notice of assignment by which Intertel merely notified the defendant that it was exercising its right to assign its payment rights to Chemical Bank. While the document served this function, it also stated in clear language and in regular-sized print, in a section comprising approximately half of the document, that Rinden would be unable to assert defenses against the assignee but would still have recourse against Intertel. Moreover, the language of the document was that of a contract. "As Lessee, you hereby acknowledge that Intertel . . . has the right of assigning the . . . Lease and *in consideration* of the Assignee having advanced funds to the Lessor to finance the equipment . . . *agree* as follows . . . ." (Emphasis added.)

■■ This document was signed by John Satterfield, an authorized representative of Rinden. Although not conclusive of an agreement, a signature "is indeed strong evidence that [the signer] is

thereby expressing his unconditional assent." A. CORBIN, CORBIN ON CONTRACTS § 31, at 117 (1963). The last sentence in the document, immediately preceding the signature of Kenneth Barron, president of Intertel, states: "please acknowledge your receipt and understanding of the above by signing and returning one copy of this document." The signature line for the defendant is preceded by the following acknowledgment:

> "I hereby acknowledge and verify the contents of this document and also certify that the above mentioned equipment has been installed and accepted."

In his deposition, Mr. Satterfield stated that he had read the document before signing it. All of these circumstances support the master's finding that Rinden agreed to the waiver of defenses clause.

The defendant does not claim that it is a consumer so as to make Mass. Gen. Laws Ann. ch. 106, § 9-206(1) inapplicable on that account. The defendant is a professional association, a law firm, not in need of special protections often provided for unwary consumers. *See, e.g.*, MASS. GEN. LAWS ANN. ch. 106, § 2-719; MASS. GEN. LAWS ANN. ch. 255, § 12(c); MASS. GEN. LAWS ANN. ch. 93A; *see also* RSA 382-A:3-305-a (Supp. 1983).

Next we must determine whether there is sufficient evidence to support the master's findings that Chemical Bank took the assignment for value, in good faith, and without notice of a claim or defense. As to the first issue, Chemical Bank paid Intertel over $8,800 for the assignment of Intertel's rights in the defendant's contract.

■ As to the next requirement, the defendant asserts that Chemical Bank is not a good faith purchaser, mainly because the plaintiff and Intertel were too closely connected. Nothing in the record indicates, however, that the relationship between Intertel and Chemical Bank was anything other than an arms-length commercial relationship.

William Tupka, the Chemical Bank employee in charge of the Intertel account, testified that Chemical Bank's course of dealing in purchasing the rights to the Rinden contract from Intertel was typical of its transactions with hundreds of other clients with which it had entered into similar agreements. Chemical Bank and Intertel were not related corporations, having common directors or owning shares of stock in each other. Nor was Chemical Bank the only bank to lend to Intertel.

Finally, the facts that Chemical Bank checked Rinden's credit rating and insisted upon an insertion of a waiver of defenses clause, before it would purchase the assignment, certainly do not prove lack

of good faith as Rinden claims. Both Mr. Tupka and Kenneth Barron, former president of Intertel, testified that these actions were standard procedure for a bank extending credit. Moreover, even if there was any evidence of interrelatedness, Massachusetts law appears to look with disfavor on the admission of past dealings between parties to show bad faith, absent some other indications of bad faith by the holder. *See Bowling Green, Inc. v. State Street Bank and Trust Co.*, 425 F.2d 81, 85 (1st Cir. 1970) (citing *Universal C.I.T. Credit Corp. v. Ingel*, 347 Mass. 119, 125, 196 N.E.2d 847, 852 (1964)).

■ There is also no basis to conclude that the master erred in finding that Chemical Bank took the assignment without notice of a claim or defense. Mr. Tupka testified that he came across nothing in his investigation of the Intertel account which would indicate that Rinden might have some kind of claim or defense relating to the lease agreement between it and Intertel. No evidence was introduced to contradict this testimony.

■ Having found the requirements of Mass. Gen. Laws Ann. ch. 106, § 9-206(1) met, the master also found that the June 11 document was a "like, signed agreement" as required for modification under the lease-purchase contract. This finding is supported by the fact that they were both written documents, signed by the same parties, dealing with terms of payment for the same equipment. Also, as discussed above, the language of the second document was that of a contract.

■ The defendant next argues that even if the terms of Mass. Gen. Laws Ann. ch. 106, § 9-206(1) were complied with, the waiver of defenses is ineffective because it was given without consideration. The short answer to this is that none was required. Mass. Gen. Laws Ann. ch. 106, § 2-209(1) states that "[a]n agreement modifying a contract within this Article needs no consideration to be binding." *Skinner v. Tober Foreign Motors, Inc.*, 345 Mass. 429, 433, 187 N.E.2d 669, 672 (1963).

Rinden argues that the transaction in question here is not governed by Article 2 but solely by Article 9, so that the above quoted statute is inapplicable. As the basis for this argument, the defendant cites Mass. Gen. Laws Ann. ch. 106, § 2-102, which provides:

> "Unless the context otherwise requires, this Article applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate *only* as a secured transaction. . . ."

(Emphasis added.)

██ ██ When construing a statute, we first look to the plain meaning of the language. *Commonwealth v. Thomas*, 359 Mass. 386, 387, 269 N.E.2d 277, 278 (1971). Giving due effect to the word "only," it is evident that Article 2 does apply to transactions in goods which involve both a sales contract and a security agreement.

The official comment to Mass. Gen. Laws Ann. ch. 106, § 2-102 bears out this interpretation:

> "The Uniform Sales Act (G.L. c. 106 § 64) excluded transactions in the form of a sale but in fact a mortgage, pledge, charge or other security, however the act did include sales wherein a security interest was retained by the seller. Conditional sales were held subject to the provisions of G.L. c. 106. The Code continues this policy and is in accord with the existing Massachusetts law. Article 2 does not apply to a transaction intended to operate only as a security transaction."

(Citations omitted.)

Case law is also in accord with our holding that Article 2 is applicable to transactions in goods involving both a sale and a security agreement. *See, e.g., Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90 n.3, 141 Cal. Rptr. 157, 162–63 n.3, 569 P.2d 751, 756–57 n.3 (1977); *Thompson Farms, Inc. v. Corn Feed Products*, 173 Ind. App. 682, 701, 366 N.E.2d 3, 14 (1977); *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 187, 219 A.2d 858, 860–61 (1966).

The defendant next claims that to enforce the waiver of defenses clause against it would violate Massachusetts public policy. The defendant bases this argument on a 1958 Massachusetts case and a statute which was in effect at the time Rinden and Intertel signed their agreement, but which was repealed shortly thereafter.

In *Quality Finance Co. v. Hurley*, 337 Mass. 150, 148 N.E.2d 385 (1958), the Supreme Judicial Court held invalid a provision in an automobile nonnegotiable conditional sales agreement which provided that if the contract was purchased from a seller, the buyer waived as against the purchaser of the contract all defenses which the buyer might have against the seller. *Id.* at 155, 148 N.E.2d at 389.

This holding was based upon Mass. Gen. Laws Ann. ch. 231, § 5, which provided: "The assignee . . . may maintain an action thereon in his own name, but subject to all defenses and rights of counterclaim, recoupment or set-off [to] which the defendant would have been entitled had the action been brought in the name of the assignor."

██ This case and statute do not help the defendant's cause.

First, Mass. Gen. Laws Ann. ch. 231, § 5 went into effect, and *Quality Finance* was decided, before the implementation of the Massachusetts version of the Uniform Commercial Code. It has been specifically held, in reference to the effect of the passage of the UCC upon Mass. Gen. Laws Ann. ch. 231, § 5, that "the subsequent act in effect repealed the . . . earlier one." *General Electric Credit Corp. v. Noblett*, 268 F. Supp. 984, 987 (W.D. Okla. 1967) (applying Massachusetts law), *rev'd on other grounds*, 400 F.2d 442 (10th Cir.), *cert. denied*, 393 U.S. 935 (1968)).

Moreover, the interpretation of Mass. Gen. Laws Ann. ch. 231, § 5 contained in *Quality Finance* is inapposite here because that case has been construed to apply only to consumer transactions and not to commercial transactions. *General Electric Credit Corp. v. Beyerlin*, 30 A.2d 762, 292 N.Y.S.2d 32 (1968) (applying Massachusetts law). As discussed previously, the law affords more protection for the unsophisticated consumer than it does for business entities.

■ The defendant finally contends that the waiver clause is unenforceable because it is unconscionable under Mass. Gen. Laws Ann. ch. 106, § 2-302. Whether a contract is unconscionable is a matter of law which "must be determined on a case by case basis . . . giving particular attention to whether, at the time of execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 291, 293, 408 N.E.2d 1370, 1375, 1376 (1980) (citations omitted). The master found neither the waiver itself, nor the manner in which it was executed, was unconscionable. The master stated that "[t]he waiver was a standard 'hell or high water' waiver of defenses clause which merely limits the parties against whom the buyer can raise certain defenses." MASS. GEN. LAWS ANN. ch. 106, § 3-305. However, the defendant could still have raised defenses or claims against Intertel, so that the waiver clause did not deprive Rinden of all its remedies. This was specifically stated in the June 11 document. The fact that Intertel subsequently went bankrupt, although unfortunate for Rinden, does not provide legal ground for it to violate its contract with Chemical Bank.

■ Nor was the language of the waiver clause "buried" so as to create unfair surprise, as the defendant contends. The waiver clause contained in the June 11 document is printed in the same sized type as the other language and occupies a substantial portion of the document. The clause was not obscurely worded:

"As Lessee, you . . . agree as follows: (a) that your obligation to pay directly to the Assignee the amounts which

come due as rentals or otherwise as set forth in said Lease shall be absolutely unconditional and shall be payable whether or not the Lease is terminated by operation of law, any act [of] the parties, or otherwise and you promise to pay the same notwithstanding any defense, set-off or counterclaim whatsoever, whether by reason of breach of the lease, or exercise or option thereunder, or otherwise, which you may or might now or hereafter have as against the Lessor (the Lessee reserving the right to have recourse directly against the Lessor on account of any such defense, set-off or counterclaim and also reserving the right if any, to purchase the equipment covered by the Lease upon conditions consented to by the Assignee at any time during the term of said Lease)."

The clear and forthright presentation of the waiver clause further supports the finding of no unconscionability. *Zapatha, supra* at 1377. The defendant's allegation of unconscionability is further undermined by the fact that Rinden's principal, Paul Rinden, is an attorney with over 30 years experience and with a substantial practice in commercial collections and a working knowledge of the UCC. *See Meehan v. New England School of Law*, 522 F. Supp. 484, 494 (D. Mass. 1981), *aff'd*, 705 F.2d 439 (1st Cir. 1983). Moreover, John Satterfield, his office manager and authorized agent, had been a commercial loan officer in a bank for 2½ years prior to his employment with Rinden.

The defendant also contends that the waiver clause was oppressive because Rinden had "no choice" but to agree to it since the phone system had already been installed and failure to sign the waiver would therefore have put Rinden in breach of contract. This argument has no merit. Although the defendant was bound under the original contract to permit an assignment, it was not required to accept a waiver of defenses or any other addition to the original terms. Had Rinden not agreed to the waiver clause, the result would have been that Chemical Bank would not have accepted the assignment; but Rinden would not thereby have breached its contract.

We note that our decision today is in accord with the policy of the UCC in general, and of § 9-206(1) in particular, "to encourage the supplying of credit for the buying of goods by insulating the [institutional] lender from lawsuits over the quality of the goods." *Massey-Ferguson Credit Corp. v. Brown*, 169 Mont. 396, 402, 547 P.2d 846, 850 (1976) (quoting *Massey-Ferguson, Inc. v. Utley*, 439 S.W.2d 57, 60 (Ky. 1969)). "A contrary holding would not only have a chilling effect on loans made by financial institutions but would mean that

the law allows the plain meaning of covenants to be declared nugatory whenever a bad bargain results." *B.V.D. Co. v. Marine Midland Bank-New York*, 46 A.D.2d 51, 53, 360 N.Y.S.2d 901, 904 (1974).

The next issue involves the master's award of attorney's fees and costs to Chemical Bank pursuant to Superior Court Rule 59 as a result of a hearing held on Rinden's second motion for summary judgment.

Rule 59 provides:

> "The Court may assess reasonable costs, including reasonable counsel fees, against any party whose frivolous or unreasonable conduct makes necessary the filing of or hearing on any motion."

The basis of the master's ruling was not, as Rinden contends, the fact that it *filed* the motion, but that it insisted on a separate *hearing* on the motion. The master in his report stated:

> "By letter of June 2, 1982 the defendant assured the Court:
>
> 'It is my opinion that the new motion for summary judgment will decisively and finally dispose of the entire plaintiff's claim in favor of the defendant.'
>
> Acting upon this representation, the Court scheduled the motion for summary judgment for a hearing in place of the trial on the merits which was scheduled for the week of August 15, 1982. The motion raised issues which have been disposed of previously, adversely to the defendant. Any of the issues raised in the motion could have been raised at the trial. The motion has caused the filing of pounds of paper with the Court and an added burden and expense for the plaintiff. The plaintiff is entitled to attorney's fees."

Acting in accordance with the court's order, counsel for Chemical Bank filed an itemized statement of counsel fees. In making its award of $568.00, the master stated:

> "In awarding attorneys fees to the plaintiff as ordered by the Court, the Master recognizes the defendant's argument that most of the time spent by plaintiff's attorney on the matter would be required in any event in order to research applicable law in preparation for a hearing on the merits. The Master, therefore, allows the time and expense wasted at the hearing because of the defendant's motion for summary judgment."

■■ In upholding the master's award we find that the master did not abuse his discretion under Rule 59 in finding that Rinden's conduct in insisting upon a hearing on its second motion for summary judgment was unreasonable under the circumstances. Additionally, the counsel fees assessed by the master were reasonable.

*Affirmed.*

SOUTER, J., did not participate; the others concurred.