691 A.2d 1320

Kevin J. SCOTT

v.

FORD MOTOR CREDIT COMPANY

No. 145, Sept.Term, 1995.

Court of Appeals of Maryland.

April 8, 1997.

Jay L. Liner, Baltimore, for Petitioner.

Robert J. Thieblot (Bruce R. Miller, Thieblot, Ryan, Martin & Miller, on brief), Baltimore, for Respondent.

Argued before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

The question presented here is whether the general three year statute of limitations or the four year statute of limitations under the Sales Article of the Uniform Commercial Code applies to an action for a deficiency after the outstanding balance on an installment sale of personalty has been credited with the net proceeds of the sale of that personalty as security under a security agreement. For the reasons set forth below, we hold that the four year statute applies here.

The relevant facts of this case are not in dispute. On May 14, 1987, the petitioner, Kevin J. Scott (Scott), purchased on credit a new 1986 Ford van from Koons Ford of Baltimore, Inc. (Koons Ford). The cash price was $18,399, and Scott made a down payment of $3,406. With the addition of tax and an extended service plan the amount financed was $17,167.95. Finance charges of $7,067.85 produced a total sales price of $27,641.80. Scott agreed to make sixty monthly payments of $403.93 each, beginning June 28, 1987. The transaction was evidenced by a signed contract on a preprinted form furnished by the respondent, Ford Motor Credit Company (FMCC), and headed, "Maryland Vehicle Retail Instalment Contract." There is no basis for any argument that the contract is one

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

under seal. The contract was assigned by Koons Ford to FMCC.

When Scott's van subsequently was damaged in an accident the costs of repair exceeded its value, and FMCC was paid the insurance proceeds. Scott ceased making the installment payments required by the contract, and the van was repossessed on August 17, 1988. It was sold at public auction on March 3, 1989. FMCC advised Scott on March 14, 1989, that there was a deficiency of $6,452.56.

FMCC's suit for the deficiency was filed on April 16, 1992, in the District Court of Maryland, sitting in Baltimore County. That filing date was more than three years, but less than four years, after both the sale and the notice of deficiency. In the courts below the only contested issue was the applicable period of limitations. Scott submitted that the period of limitations for FMCC's claim is controlled by Maryland Code (1974, 1995 Repl.Vol.), § 5-101 of the Courts and Judicial Proceedings Article (CJ). It reads:

"A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

FMCC submitted that the period of limitations for its claim was controlled by Md.Code (1975, 1997 Repl.Vol.), § 2-725(1) of the Commercial Law Article (CL), reading in part as follows: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."

The District Court entered judgment for FMCC, and Scott appealed to the Circuit Court for Baltimore County. That court, in a written opinion, affirmed the District Court. Scott then petitioned this Court for the writ of certiorari which we issued.

The provisions of the installment contract that are relevant to the arguments of the parties are those dealing with the security interest in the van, the creditor's remedies on the

buyer's default, and applicable law. Paragraph B of the agreement provides:

"**Security Interest:** You give the Creditor a security interest in the vehicle, in all parts or other goods put on the vehicle, in all money or goods received for the vehicle and in all insurance premiums financed for you. This secures payment of all amounts you owe in this contract. It also secures your other agreements in this contract."

Paragraph F deals with a default by the buyer. After describing the rights of the respective parties from a default through the conclusion of a sale of the security, ¶ F states:

"If there is any money left (a surplus), it will be paid to you. If the money from the sale is not enough to pay off this contract and costs, you will pay what is still owed to the Creditor, if allowed by law."

Paragraph G, "**General**," in relevant part reads:

"The law of Maryland applies to this contract including Subtitle 10 of the Maryland Commercial Law Article."

In *Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 613 A.2d 986 (1992), we held that the reference in the FMCC form contract to Subtitle 10 effected an election to have the contract governed by CL Title 12, Subtitle 10, "Credit Grantor Closed End Credit Provisions" (CLEC). Accordingly, we turn initially to CLEC to see if it addresses limitations on claims for a deficiency.

I

CLEC does not contain any statute of limitations. CLEC does, however, regulate the repossession of tangible personal property securing a loan under an agreement governed by CLEC. See CL § 12–1021. These provisions dealing with repossession make reference to a claim for a deficiency. Where, as here, there has been a public sale of the security for a loan in excess of $2,000, CL § 12–1021(k) addresses the disposition of the sale proceeds. They are to be applied first to the cost of sale, next to the cost of retaking and storage, and then to the "unpaid balance owing under the agreement at

the time the property was repossessed." CL § 12–1021(k)(2)(iii). Under CL § 12–1021(k)(3) the credit grantor must furnish the consumer borrower with a written statement showing the distribution of the proceeds. Of particular relevance to the instant matter is CL § 12–1021(k)(4) which reads:

"If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement."

Scott does not contend that the requirements of CLEC were not followed. Thus, CLEC's prohibition against seeking a deficiency is inapplicable here. That prohibition, however, reflects that the right to claim a deficiency is determined by the provisions of the loan agreement. Accordingly, we redirect our attention to the contract.

## II

The contract is a sale transaction under CL Title 2. The sale transaction is also a secured transaction under CL Title 9. Scott argues that the deficiency suit relates to the security aspect rather than to the sale aspect so that the statute of limitations in the sales title, CL § 2–725, should not apply. He contends that CL Title 9 governs the part of the contract from which this suit arose so that the limitations period should be determined under that title. Because the Secured Transactions Title does not have a limitations period, Scott argues that the general, three year statute, CJ § 5–101, should apply.

Scott claims that CL § 2–102, the scope section for CL Title 2, confirms that only the sales component of the subject contract should be governed by Title 2 while the security aspects of the contract should be governed by Title 9. CL § 2–102 reads:

"Unless the context otherwise requires, this title applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a

security transaction nor does this title impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers."

Scott looks to the Official Comment to CL § 2–102 which states that "Title [2] leaves substantially unaffected the law relating to purchase money security such as conditional sale or chattel mortgage though it regulates the general sales aspects of such transactions." Scott then concludes that a

"suit for a deficiency is inextricably related to the security aspects of the contract.... [B]ut for the financing charges, there would not be a deficiency. Subsequent to default, [FMCC's] actions, including repossession and resale, were far removed from the 'pure' sales component of the contract governed by [Title] 2. Therefore, this suit for a deficiency should not be governed by the four year statute of limitations of the sales article, § 2–725."

Petitioner's Brief and Appendix at 5.

Scott relies primarily on a case decided by the North Carolina intermediate appellate court. In *North Carolina Nat'l Bank v. Holshouser*, 38 N.C.App. 165, 247 S.E.2d 645 (1978), the court examined limitations in a case similar to the instant one. Holshouser had purchased a motor vehicle on credit, giving the seller a purchase money security interest in the vehicle. The plaintiff, a bank, was the assignee of the seller's side of the contract. The bank repossessed the automobile and sold it at public auction, resulting in a deficiency. More than four years later the bank sued for the deficiency. The debtor claimed that the applicable time limit was the four year period under the U.C.C., while the bank urged the ten year period for suits on sealed instruments.

The text of the relevant North Carolina U.C.C. sections is the same as that of the corresponding U.C.C. sections in Maryland, and the Official Comments to U.C.C. § 2–102 are the same in North Carolina and in Maryland. In North Carolina, however, an additional, local comment to U.C.C. § 2–102 states "that the article on sales does not apply to transactions intended as security even though in the form of

an unconditional contract of sale or to sell." This local comment omits the qualifier, "only," that immediately precedes "as a security transaction" in the text of § 2–102.

The North Carolina court held that

"[t]he four-year limitation of actions found in G.S. § 25–2–725(1) applies on its face only to actions for breach of any contract for sale. Since the purchase money security agreement signed and sealed by the defendant is a creature of Article 9 . . . and is outside the provisions of Article 2 (although encompassing a sale of a motor vehicle), we hold that the provisions of G.S. § 25–2–725 are inapplicable to this transaction beyond its pure sales aspects, and that Article 9 is paramount in reference to the security aspects of the transaction."

247 S.E.2d at 647. The court then held the applicable statute to be the ten year statute for suits on sealed instruments.

As we shall demonstrate, *infra, Holshouser* represents the minority position on the issue before us. Further, *Holshouser* relied on the North Carolina local comment to U.C.C. § 2–102 to distinguish the leading case in the majority line of cases, *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 219 A.2d 858 (1966). *See Holshouser*, 247 S.E.2d at 648.

FMCC urges us to adopt the majority position represented by *Palmer*. The contract in *Palmer* was a "bailment lease" originally signed by Palmer and the automobile dealer in Pennsylvania and assigned by the dealer to Associates Discount Corporation. The assignee sued for a deficiency almost seven years after the amount of the deficiency had been established. In opposition to the consumer's argument that the U.C.C. four year statute applied, the assignee argued that the statute governing contracts under seal applied.

The court viewed the contract as a hybrid agreement, constituting both a contract for sale and a secured transaction. *Palmer*, 219 A.2d at 860. The court emphasized that U.C.C. § 2–102 excluded from "Article 2 those dealings designed to operate *only* as security transactions." *Id.* at 861 (footnote omitted). The exclusion did not apply because "the instru-

ment sued upon in the present case is not *only* a security agreement but is a sales contract as well." *Id.* The court reasoned that the nature of a deficiency suit is

> "nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement. . . . Thus, because of the absence of a contrary indication anywhere in the Code, a deficiency action must be considered more closely related to the sales aspect of a combination sales-security agreement rather than to its security aspect and be controlled by the four-year limitation in . . . § 2–725."

*Id.* (footnote omitted).

This reasoning is analytically correct. Here, FMCC's suit for a deficiency judgment is an action in contract for breach of Scott's undertaking set forth in ¶ F of the agreement: "If the money from the sale is not enough to pay off this contract and costs, you will pay what is still owed to the Creditor. . . ."

One of the decisions that applied the *Palmer* rationale is *Massey–Ferguson Credit Corp. v. Casaulong*, 62 Cal.App.3d 1024, 133 Cal.Rptr. 497 (1976). The California court found additional support in the analogy to deficiency judgments after the foreclosure of deeds of trust on realty securing loans evidenced by promissory notes. The court stated that

> "[t]he rationale of these decisions is that an action to recover a deficiency judgment is 'founded' upon the instrument secured by the mortgage, deed of trust, contract of purchase, or other contract whereby the security is given, even though the amount of the deficiency that the holder is entitled to recover may not be susceptible of ascertainment until the security has been exhausted."

133 Cal. Rptr. at 499–500. Accordingly, "[b]y parity of reasoning, an action to recover a deficiency arising from resale of

goods originally purchased under conditional sale contract is based upon the contract of sale." *Id.* at 500.

The court in *Worrel v. Farmers Bank of Delaware*, 430 A.2d 469 (Del.1981), also agreed with *Palmer*'s reasoning and held that the four year statute of limitations under U.C.C. Article 2 applied to an action for a deficiency after a security interest in personalty sold to the debtor had been foreclosed. *Id.* at 473. The court stated that

"our Commercial Code fairly clearly states that a seller's retention of a security interest under a sales transaction does not remove the transaction from the operation of Article 2 of the Uniform Commercial Code. Section 2–102 excludes from the operation of Article 2 only those transactions in goods which are 'intended to operate only as a security transaction....'"

*Id.* at 472. The Delaware Comment to § 2–102 explains a purported sale designed "only" to be security.

" '[Section 2–102] excludes from coverage of the Sales Article transactions which are actually security transactions but which are disguised in the "form" of the sale. However, since the section merely excludes transactions which are intended to operate only as security transactions, actual sales transactions in which the seller also retains a security interest are covered by this chapter....'"

*Id. Holshouser* was distinguished from *Palmer* in that the former was premised on the intent of the North Carolina legislature which the *Holshouser* court had found to be " 'precisely contrary to that of the Pennsylvania Legislature' " in *Palmer*. *Id.* at 473 (quoting *Holshouser*, 247 S.E.2d at 648).

Another case examining the word "only" in § 2–102 is *Chemical Bank v. Rinden Professional Ass'n*, 126 N.H. 688, 498 A.2d 706 (1985). In that case the buyer under a lease-purchase agreement had executed a waiver of defenses that was governed by Massachusetts law in favor of the seller's assignee. In the assignee's suit for the balance on the contract, the buyer asserted that there was no consideration for the waiver. In reply, the assignee relied on § 2–209(1) of the

Massachusetts U.C.C. providing that a contract modification needs no consideration. The buyer's rejoinder was that the transaction was governed by Article 9 and not by Article 2. 498 A.2d at 712. The court stated that "[g]iving due effect to the word 'only' [in § 2–102], it is evident that Article 2 does apply to transactions in goods which involve both a sales contract and a security agreement." *Id.* at 713. The court quoted from the Official Comment to the Massachusetts U.C.C. § 2–102, which stated that application of Article 2 to sales in which the seller retained a security interest simply carried forward the application of the former Uniform Sales Act and that the exclusions from the latter were transactions in the form of sales which were in fact mortgages or pledges. *Id.* Among the authorities cited by the New Hampshire court for its "holding that Article 2 is applicable to transactions in goods involving both a sale and a security agreement" was *Associates Discount Corp. v. Palmer. Id.*

The Supreme Court of New Mexico in *First Nat'l Bank v. Chase,* 118 N.M. 783, 887 P.2d 1250 (1994), also concluded that the *Holshouser* decision was based upon the legislative intent of the North Carolina legislature. Relying on the reasoning, *inter alia,* of *Palmer,* the *First National* court held that "a deficiency action is essentially an action for the price," so that the four year statute of limitations under Article 2 governs. 887 P.2d at 1252.

Other cases standing for the proposition that the four year limitation under U.C.C. Article 2 applies are: *Jack Heskett Lincoln–Mercury, Inc. v. Metcalf,* 158 Cal.App.3d 38, 204 Cal.Rptr. 355 (1984) (seller's action for deficiency owed by defaulting buyer of car after car's repossession sale); and *Mobile Discount Corp. v. Price,* 99 Nev. 19, 656 P.2d 851 (1983) (suit by assignee against purchasers following repossession and sale of mobile home). *Compare Chaney v. Fields Chevrolet Co.,* 264 Or. 21, 503 P.2d 1239 (1972) (buyer's action to recover surplus after foreclosure sale of security more closely related to security aspect of contract than to aspect which concerns original sale).

Scott also submitted at oral argument in this Court that the contract of sale terminated at the time the vehicle was delivered to him, so that all that remained was for the creditor to enforce its security interest. *Citizen's Nat'l Bank v. Farmer,* 77 Ill.App.3d 56, 32 Ill.Dec. 740, 395 N.E.2d 1121 (1979), rejected a similar argument. There the defendant purchased an automobile, making a cash down payment and signing an installment contract for the balance. This contract was assigned by the seller to Citizen's Bank which sued more than four years after the buyer's breach. The creditor relied on a ten year statute of limitations that applied to written contracts but expressly excepted the operation of U.C.C. § 2–725, while the buyer urged the latter statute's four year limit. 32 Ill.Dec. 740, 395 N.E.2d at 1122. To avoid § 2–725, the bank argued that the buyer's breach involved her obligation to make payments rather than a breach of a contract for the sale of goods. *Id.* at 1123. Much like Scott's argument to us

> "[the bank] argue[d] that the contract is really a hybrid instrument containing provisions for the sale of goods and provisions for the obligation to pay. The bank would have us hold that the sale of goods occurred on the date the contract was signed. It argue[d] that this action is one for breach of defendant's promise to pay which is an action based on the debtor-creditor rather than the buyer-seller relationship."

*Id.* The Illinois court found no basis for making this distinction. It reasoned that "[t]he obligation to pay is a fundamental part of the contract for sale" and that the payment obligation is "not . . . separate and distinct from the transfer of the physical possession of the automobile." *Id.* Relying on the *Palmer* case, the court noted that, had the seller not assigned the contract to the bank, the cause of action would have been governed by § 2–725. *Id.* at 1124. Consequently, "[t]he fact that plaintiff-bank brought this action as an assignee of the contract does not change that result. This is an action for breach of a contract for sale. . . ." *Id.*

Relying on the line of cases that follow the *Palmer* analysis, 9A R.A. Anderson, *Uniform Commercial Code* § 9–504:232, at 612 (3d ed. 1994 Rev.), states:

"An action to recover a deficiency judgment is not governed by Article 9 as it is merely an ordinary action seeking to enforce the underlying obligation. Thus the action of the creditor to recover a deficiency judgment from a credit buyer of goods is in substance an action to recover the balance of the purchase price and is therefore subject to the statute of limitations applicable to such actions, namely, four years."

(Footnote omitted).

We are further mindful of the legislative declaration in CL § 1–102(1) that the Uniform Commercial Code is to be "liberally construed and applied to promote its underlying purposes and policies." Those purposes and policies include "mak[ing] uniform the law among the various jurisdictions." CL § 1–102(2)(c).

For all of the foregoing reasons we hold that the courts below correctly determined that the four year period of limitations under CL § 2–725(1) applies to the instant matter.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, KEVIN J. SCOTT.**

ELDRIDGE, Judge, dissenting.

I disagree with the majority's decision that the four-year statute of limitations set forth in Maryland Code (1975, 1992 Repl.Vol.), § 2–725(1) of the Commercial Law Article, applies to the instant transaction.

The majority concedes that Title 9 of the Commercial Law Article, which is applicable to secured transactions, is applicable to the transaction at bar because the motor vehicle at issue was collateral for the security agreement. The majority, however, holds that the four-year statute of limitations in Title 2, which applies to transactions for the sale of goods, is applicable to the deficiency action brought by Ford Motor

Credit Company (FMCC), the assignee of the agreement between the Scotts and Koon's Ford, upon the Scotts' default. In so holding, the majority rejects the logical conclusion that the time period for filing a deficiency action under these circumstances, along with all other aspects of such action, should be governed by Title 9 of the Commercial Law Article rather than by Title 2. The majority's decision today results from placing the form of a commercial transaction above its substance, and from a strained construction of Titles 2 and 9.

The majority opinion, while recognizing that the instant agreement between the Scotts and FMCC is a "hybrid" agreement possessing characteristics of both a sales contract and a security agreement, nevertheless concludes that the nature of the instant deficiency action is (slip opinion at 8):

"nothing but ... an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether ... the sale is accompanied by a security arrangement.... [A] deficiency action must be considered more closely related to the sales aspect of a combination sales-security agreement rather than to its security aspect...."

As support for this conclusion, the Court relies upon *Associates Discount Corporation v. Palmer*, 47 N.J. 183, 219 A.2d 858 (1966), and some subsequent cases which simply adopt the *Palmer* holding. In addition, the majority finds support for this "analytically correct" reasoning in paragraph F of the parties' agreement, addressing the creditor's rights upon default, repossession and resale, and providing that "[i]f the money from the sale is not enough to pay off this contract and costs, you [the debtor] will pay what is still owed to the Creditor...."

The Court's reasoning, however, oversimplifies the nature of the instant transaction. The agreement between the parties was not a sale of a motor vehicle where the seller was immediately paid the entire contract price. Instead, the agreement provided for a small down-payment by the Scotts and for the balance of the purchase price to be financed

through Koon's Ford, creating a security interest in the motor vehicle as collateral to ensure payment of the financed amount. This type of arrangement is the usual practice today because of the high cost of automobiles. Yet, the majority appears to analyze the transaction and financing arrangement in this case as if it were a "cash sale" arrangement, producing a result in defiance of the realities of modern automobile financing.

I agree with Judge Hall, who concurred in *Associates Discount Corp. v. Palmer, supra,* 47 N.J. at 188–194, 219 A.2d at 861–865. The *Palmer* case and the case at bar are similar. Both concern agreements consisting of installment sale contracts simultaneously creating purchase money security interests—"combination, all-inclusive instrument[s], constituting both a contract for sale and a security transaction." *Associates Discount Corp. v. Palmer, supra,* 47 N.J. at 190, 219 A.2d at 862. Judge Hall, concurring in *Palmer,* reasoned as follows (47 N.J. at 191–193, 219 A.2d at 863–864):

> "All security transactions, on the other hand, whether created in connection with a sale or otherwise, are governed by Article 9 of the Code entitled "Secured Transactions * * * " and other special state statutes saved from repeal.... The rights, remedies and obligations of a purchase money security holder in the event of default, including repossession, resale and right of action for deficiency, are defined and controlled by Article 9 and the special saved statutes. It may be suggested that no Article 2 provision would apply since such matters are not 'general sales aspects' of the transaction."

> \* \* \* \* \* \*

> "This over-all structure of the Code would indicate that the statute of limitations provision in Article 2 was intended to apply only to actions particularly related to the sale itself, the primary transaction, such as claims for breach of warranty and the price of goods. The official comment to section 2–725 appears to bear out this thesis:
> 'Purposes:

To introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nation-wide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period.'

"I think there is considerable merit to the view that a suit for a deficiency, the amount of which is controlled by Article 9 and saved statutes, is not simply an action for the balance of the price of the goods."

The above-quoted reasoning is sound. Section 2–102 of the Commercial Law Article delineates the proper scope of Title 2, and provides:

"*Unless the context otherwise requires,* [Title 2] applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is *intended to operate only as a security transaction* ..." (emphasis supplied).

The text of § 2–102 contemplates that the context of the transaction at issue be considered when assessing the applicability of Title 2, recognizing that, among other things, substance should prevail over form when determining the applicability of the appropriate statute of limitations. The Official Comment to § 2–102 states that the purpose of this section "leaves substantially unaffected the law relating to purchase money security such as conditional sale or chattel mortgage though it regulates the general sales aspects of such transactions."

Despite the majority's conclusion that Title 2 applies to transactions creating both a contract of sale and a security agreement, Title 2 contains no information concerning either the requirements for an enforceable security interest or any

discussion of the rights, remedies and obligations of the holder of a security interest upon default, including the right to repossess, the right to resell in a commercially reasonable manner, and the right of action for deficiency. These rights, remedies and obligations are all enumerated and discussed in Title 9, which by its terms governs secured transactions. *See First Nat'l Bank v. Chase*, 118 N.M. 783, 786, 887 P.2d 1250, 1253 (1994) (Franchini, J., dissenting):

"Significantly, the [creditor] had the right to take possession of the collateral upon default without judicial process under Article 9 [of the UCC] ... and to sell it under [Article 9]—not under Article 2. The deficiency arose out of the default under the security agreement and subsequent sale."

Under the majority's holding, § 2–725(1) of the Commercial Law Article applies to deficiency actions brought by a third-party financier who is the assignee of a sales contract, but the general three-year statute of limitations in Code (1974, 1995 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article, applies to deficiency actions when the sales contract and financing provisions are separate documents. Thus, most actions brought by banks or other lending institutions will be governed by the three-year period of limitations. The majority makes the result turn on whether the sales agreement and the financing agreement are combined in one document or are separate documents. The majority's view, therefore, disregards the substance of the transactions in favor of adherence to form.

Although the agreement between the parties in the present case was a single all-inclusive document governed by both Title 2 and Title 9 of the Commercial Law Article, the substance of FMCC's deficiency action related to the security aspects of the transaction, not the contract of sale. FMCC, as the assignee of Koon's Ford's security interest in the automobile, had the right to receive monthly payments provided for in the agreement between the Scotts and Koon's Ford. FMCC, however, is not a dealer or seller of automobiles; rather, it is a financing company in the business of making automobile loans. Thus, FMCC's function is identical to that

of a bank when making automobile loans. In substance, financing the purchase of an automobile through FMCC and financing the purchase of an automobile through a bank is the same. Because the majority values form over substance, however, different periods of limitations will be applicable.

The automobile in this case was repossessed by FMCC and sold at auction in 1989. FMCC notified the Scotts of the resulting deficiency on March 14, 1989. FMCC, however, did not file the instant deficiency action until April 16, 1992, more than three years later. I would hold that this action is barred by § 5–101 of the Courts and Judicial Proceedings Article because it was filed more than three years after the Scotts received notice of the deficiency.

Judge RAKER has authorized me to state that she concurs with the views expressed herein.