Angela M. BARNES, Appellant,

v.

COMMUNITY TRUST BANK, Appellee.

No. 2002–CA–000980–MR.

Court of Appeals of Kentucky.

Sept. 19, 2003.

Case Ordered Published by
Court of Appeals Nov. 7, 2003.

Ira D. Newman, Appalachian Research
& Defense Fund of Kentucky, Inc., Rich-
mond, KY, for Appellant.

Casey C. Stansbury, David M. Knights,
Fowler, Measle & Bell, LLP, Lexington,
KY, for Appellee.

Before EMBERTON, Chief Judge;
McANULTY, Judge; and
HUDDLESTON, Senior Judge.[1]

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Ky.Rev.Stat. (KRS) 21.580.

## OPINION

HUDDLESTON, Judge.

█ Angela Barnes appeals from a summary judgment in favor of Community Trust Bank in the amount of $10,183.13 with interest and an attorney's fee of $1,527.46, arising from a deficiency following the repossession and sale of a 1992 Toyota truck. Community Trust filed its action five and one-half years after it repossessed and sold the truck. The question raised by Barnes on appeal is whether the statute of limitations set forth in Kentucky Revised Statutes (KRS) 355.2–725 operates to bar Community Trust's action, which was indisputably filed outside the four-year period prescribed by KRS 355.2–725.

KRS 355.2–725 is Kentucky's adoption of section 2–725 of the Uniform Commercial Code (UCC). It provides that:

(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six (6) months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective.

Barnes argues that the statute, specifically subsection (1), operates to bar Community Trust's action. Community Trust, however, argues that KRS 355.2–725 does not apply to a sale of a motor vehicle but that instead the 15–year statute of limitations applicable to written contracts contained in KRS 413.090 applies.

In making this argument, Community Trust posits that motor vehicles should not be included in the definition of "goods." Under this line of reasoning, a motor vehicle sale would not come under the scope of Article 2 of the UCC, which deals with sales of goods. Thus, KRS 355.2–725 would not apply to the instant sale.

In support of its argument, Community Trust refers to the definition of goods contained in KRS 371.210, which provides:

As used in KRS 371.210 to 371.330, unless the context otherwise requires:

(1) "Goods" means all tangible chattels personal when purchased primarily for personal, family or household use and not for commercial, industrial or agricultural use, but not including motor vehicles as herein defined, money, things in action or intangible personal property....

While this passage appears to support Community Trust's position, closer analysis reveals that this section is inapplicable. As correctly noted by Barnes, KRS 371.210 *et seq.*, is the Kentucky Retail

Installment Sales Act, which is a consumer protection statute mandating the content of retail installment sales contracts in the context of consumer goods. Its definition of "goods," by its explicit terms, applies only to that statute and nothing else. Presumably, the reason motor vehicles are excepted from its coverage is that motor vehicle sales contracts are covered by another enactment, the Kentucky Motor Vehicle Retail Installment Sales Act codified at KRS 190.090 *et seq.* The Motor Vehicle Retail Installment Sales Act contains similar consumer protections to the more general Retail Installment Sales Act, but is specifically tailored to the sale of motor vehicles.

Neither of the above retail sales acts provide a remedy for an aggrieved seller or seller's assignee. Rather, the remedies available to a seller or assignee (as in the case of Community Trust) for breach of a contract for the sale of goods are found at KRS 355.2–703 to KRS 355.2–709, which are within UCC Article 2. Article 2's definition of "goods" is found at KRS 355.2–105:

> (1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (KRS 355.2–107).

A Toyota truck is a thing which is movable at the time of identification to the contract for sale, and therefore comes within Article 2's definition of "goods."

The more difficult question, which Community Trust failed to raise but is revealed in the case law on this subject, is whether the seller's (or assignee of the seller) cause of action accrues from the breach of the contract for the sale of a good or whether it arises from the breach of a security instrument. If it is the latter, Article 9 of the UCC would govern rather than Article 2. While this question does not appear to have been answered in Kentucky, it has been addressed by the courts of several other states.

*Citizen's National Bank of Decatur v. Farmer* [2] deals with a similar fact pattern. In that case, a consumer purchased a motor vehicle with a cash down payment and retail installment contract. The dealership assigned the installment contract to Citizen's National Bank. When the consumer defaulted on her payment obligation, the bank sued to enforce the unpaid obligation. In deciding that the action was governed by the four-year statute of limitations in UCC 2–725, the Court's reasoning was as follows:

> The bank's argument for application of the 10–year statute, although novel, is unacceptable. It argues that defendant's breach was of her obligations to make payment, not of a contract for the sale of goods. In the contract, defendant agreed to make 18 monthly payments commencing on August 25, 1972, and plaintiff argues that the contract is really a hybrid instrument containing provisions for the sale of goods and provisions for the obligation to pay. The bank would have us hold that the sale of goods occurred on the date the contract was signed. It argues that this action is one for breach of defendant's promise to pay which is an action based on the debtor-creditor rather than the buyer-seller relationship.

**2.** 77 Ill.App.3d 56, 32 Ill.Dec. 740, 395 N.E.2d 1121 (1979).

We find no basis for making such a distinction.

. . . .

A contract for sale includes both a present sale and a contract to sell in the future. The sale consists of the passing of title to the buyer for a price.[3] The obligation to pay is a fundamental part of the contract for sale. It is not, as plaintiff suggests, separate and distinct from the transfer of the physical possession of the automobile. Nor is this a case where a buyer borrows money from a third person and uses that money to purchase goods from a merchant.

Moreover, the comments to section 2–725 of the Uniform Commercial Code state that it is designed to introduce a uniform statute of limitations for sales contracts and to eliminate jurisdictional variations.[4] An examination of cases from other jurisdictions wherein this issue has been considered shows that it has consistently been held that actions such as the one at bench are governed by section 2–725, the 4 year limitation statute.

In *Associates Discount Corp. v. Palmer*,[5] the defendant purchased an automobile and financed the purchase with a bailment lease security agreement. The contract was then assigned to Associates who waited more than 7 years after defendant's breach to initiate an action to recover a deficiency due on the contract. It was held that Associates' action was barred by the 4–year statute of limitations contained in section 2–725 of the Uniform Commercial Code. Although the lease was both a contract for sale and a security transaction, the court

reasoned that a suit for a deficiency is nothing more than an *in personam* action for that part of the sales price which remains unpaid. It is simply an action to enforce the obligation of the buyer to pay the full sales price and that obligation is an essential element of all sales.[6]

We believe the reasoning employed by the Court of Appeals of Maryland in *Burton v. Artery Co.*,[7] further supports the result we reach in this case. In *Burton*, the court was faced with the question of whether an action brought by the seller to recover sums due for the sale of certain trees and shrubs was an action for breach of a contract for sale. The answer to that question was clearly provided by reference to section 2–709 of the Uniform Commercial Code. That section affords the seller a remedy when a buyer fails to make payment for his purchase. The remedy afforded is an action for the price. Both section 2–709 and section 2–725 appear in that portion of the Code entitled "Remedies." The inclusion of both sections in the remedies portion of article 2 of the Uniform Commercial Code clearly indicates that the limitation contained in section 2–725 is to be applied to a seller's action under section 2–709.

If [the auto dealership] had not assigned this contract to the bank, it is obvious to us that its cause of action on the contract would be governed by section 2–725. The fact that [the bank] brought this action as an assignee of the contract does not change that result. This is an action for breach of a contract

---

3.   Ill.Rev.Stat.1977, ch. 26, par. 2–106.

4.   Ill.Ann.Stat., ch. 26, par. 2–725, Comments, at 614 (Smith–Hurd 1977).

5.   47 N.J. 183, 219 A.2d 858 (1966).

6.   Accord, *Massey–Ferguson Credit Corp. v. Casaulong*, 62 Cal.App.3d 1024, 133 Cal.Rptr. 497 (1976).

7.   279 Md. 94, 367 A.2d 935 (1977). *See also Scott v. Ford Motor Credit Co.*, 345 Md. 251, 691 A.2d 1320 (1997).

for sale and should have been brought within 4 years of defendant's breach.[8]

We agree with the courts of the other states discussed above that while this case may be viewed as involving a hybrid contract, it deals essentially with a contract for the sale of a good. As such, it falls squarely within Article 2 of the Uniform Commercial Code, and should be governed by the limitations period contained in that article.

Community Trust argues that if we apply the four-year statute of limitations, it will "drastically change the long recognized collection processes within the state." We are unpersuaded by that argument. Collection processes have long been required to be undertaken in a commercially reasonable manner; fifteen years from the date of default is not a reasonable time to allow a simple automobile collection action to languish. It defies the sound policy of the Uniform Commercial Code to provide finality within a reasonable time period so that buyers and sellers may proceed with their affairs. Four years is a more than ample period of time to allow a seller or assignee of a seller to determine any deficiency remaining following the breach of a contract for the sale of a good and institute suit thereon.

Accordingly, we hold that this case is governed by the four-year statute of limitations contained within KRS 355.2–725. The judgment is reversed and this case is remanded to Madison Circuit Court with directions to dismiss Community Trust Bank's complaint.

ALL CONCUR.

---

**8.** *Citizen's National Bank, supra,* n. 2, 77 Ill. App.3d at 57, 32 Ill.Dec. 740, 395 N.E.2d at 1122.