828 A.2d 821

Cordella GREEN, et al.

v.

FORD MOTOR CREDIT COMPANY, et al.

No. 1674, Sept. Term, 2002.

Court of Special Appeals of Maryland.

July 8, 2003.

Thomas J. Minton (Jiranek, Goldman & Minton, P.C., on the brief), Baltimore, for appellants.

Terri L. Goldberg (S. Todd Wilson and Eccleston & Wolf, P.C., on the brief for appellee, Thieblot, Ryan, Miller & Hrehorovich, P.A.), Thomas G. Parachini (P. Rivka Schochet, Miller, Canfield, Paddock, Stone, P.L.C., Detroit, MI, Steven C. Kahn and Miller, Canfield, Paddock and Stone, P.L.C., Washington, DC, on the brief for appellee, Ford Motor Credit Company.

Argued before SALMON, CHARLES E. MOYLAN, JR. (Ret., Specially Assigned), ROBERT F. FISCHER, (Ret., Specially Assigned), JJ.

SALMON, Judge.

Cordella Green ("Ms. Green") and George Johnson brought suit in the Circuit Court for Baltimore City against Ford Motor Credit Company ("FMCC") and the law firm of Thiebolt, Ryan, Miller and Hrehorovich, P.A. ("Thiebolt, Ryan"). The defendants filed a motion to dismiss for failure to state a cause of action upon which relief could be granted. The motions judge, the Honorable Allen L. Schwait, granted the dismissal motion as to Johnson due to his failure to allege any damages. The court granted the motion to dismiss all claims made by Ms. Green on the basis that her claims were barred by the doctrine of *res judicata.*

Both Johnson and Ms. Green filed an appeal to this Court. Nevertheless, in the brief filed by appellants, no argument is advanced that would suggest that Judge Schwait erred in granting the dismissal motion as to Johnson's claims. Moreover, counsel for appellants, at oral argument, agreed that Judge Schwait had appropriately dismissed Johnson's claims. Accordingly, the sole issue presented is whether the court erred in dismissing the complaint as to Ms. Green.

## I. *FACTS AS ALLEGED IN APPELLANTS' COMPLAINT* [1]

Ms. Green purchased an automobile from a Ford dealer in 1995. The purchase was financed by a loan from the dealer. The loan contract was later assigned to FMCC. That contract referred to and incorporated by reference all the provisions of the Credit Grantor Closed End Credit ("CLEC") statute, which is codified in Title 12, Subtitle 10, of the Commercial Law Article ("CL") of the Maryland Code (1975, 2000 Repl. Vol.).

CL section 12–1021(e) requires that in the event that a creditor repossesses a car or other item, the creditor must send the debtor a notice telling the debtor (1) where the item is located and (2) the place where the item will be sold.

Ms. Green failed to make her car payments when due. As a result, FMCC repossessed her vehicle. On February 24, 1998, which was shortly after her car was repossessed, FMCC sent Ms. Green a "Notice of Repossession & Right to Redeem." The notice advised that Ms. Green's car was located at the Baltimore Washington Auto Exchange ("BWAE"), 7151 Brookdale Drive in *Baltimore*, Maryland, and that a public sale of the vehicle would be conducted at the same address on April 7, 1998, at 9:30 a.m.

Contrary to the statement in the notice, Ms. Green's repossessed automobile was located at 7151 Brookdale Drive in *Elkridge*, Howard County, Maryland. Although there is a Brookdale Drive in Baltimore City, that street is approximately fifteen miles from BWAE's facility in Elkridge.

On April 7, 1998, Ms. Green's car was sold at public auction at 7151 Brookdale Drive in Elkridge. The sale resulted in a $4,854.19 deficiency.

In December 1998, FMCC filed suit against Ms. Green in the District Court of Maryland for Baltimore City. In its

---

1. Our recital of the facts in Part I focuses exclusively on those facts that Ms. Green contends supported the seven counts set forth in the complaint. We have omitted the assertions raised by Mr. Johnson.

statement of claim, FMCC alleged, *inter alia,* that Ms. Green's vehicle was "repossessed and sold in accordance with the provisions of the [installment-sale] agreement." This latter statement was technically false because the agreement required FMCC to comply with CL section 12–1021, which, in turn, required the repossession notice to provide the debtor with notice of the exact location of the car that was repossessed and the place where the car was to be sold.

Ms. Green, on February 11, 1999, entered into a consent judgment with FMCC. The agreement was as follows:

> [A] judgment [was to be entered] in the amount of $4,865.19, plus prejudgment interest in the amount of $218.33, plus post-judgment interest at the legal rate, plus attorney's fees in the amount of $729.77 and court costs. [She] further agree[d] to make payments to [FMCC] at the rate of $200.00 per month, commencing 2/15/99, and each month thereafter until the judgment [was] paid. [FMCC] agree[d] not to execute on the judgment so long as [d]efendant makes the payments as agreed.

Ms. Green did not make the $200 monthly payments as required by the consent judgment, and as a result, FMCC filed a garnishment proceeding to attach Ms. Green's wages and monies she held in a bank account. In December 2000, Ms. Green filed a motion to quash the garnishment proceeding. One of her grounds for that motion was that the consent judgment was invalid because the notice of sale provided by FMCC did not accurately provide her with information as to the place where the repossessed automobile would be sold.[2] Ultimately, FMCC voluntarily quashed the garnishment as to all property other than wages.[3] In regard to the wage

---

2. According to an affidavit filed by FMCC, Ms. Green had actual notice of the place where the car was stored and later sold because her car was repossessed once before, and she went to the 7151 Brookdale address in Elkridge Drive to redeem her car.

3. According to the District Court docket entries, copies of which are in the joint record extract, Ms. Green's motion to quash the garnishment

garnishment, Ms. Green's wages were garnished until the judgment was satisfied sometime in July 2001.

On November 9, 2001, which was approximately three months after having paid off the judgment against her, Ms. Green, along with Mr. Johnson, commenced the subject law suit against FMCC. On February 21, 2002, the plaintiffs filed their first amended complaint in which they added Thiebolt, Ryan as defendants.

Judge Schwait, in his written opinion dismissing this case, accurately summarized the seven counts of appellants' complaint. His summary, with certain additions (which we have placed in brackets) and a few deletions, was as follows:

> FMCC has used in the past and continues to use the services of BWAE in Elkridge, Maryland for repossession, storage and sale of cars repossessed by FMCC. Plaintiffs aver that cars repossessed by FMCC are brought to BWAE from locations throughout the State of Maryland. For all of these repossessed cars, FMCC issues standard form Notices of Repossession, with blank spaces for individual account information. Plaintiffs contend that, since 1992, FMCC has issued notices set forth on a standard form that stated that the repossessed cars had been taken to and stored in Baltimore, Maryland when, in fact, they had been taken to Elkridge, Maryland. . . .
>
> . . . [U]nder Count I of their Amended Complaint, [p]laintiffs seek declaratory judgment . . . injunctive relief [and restitution]. Specifically, [p]laintiffs ask that the [c]ourt declare the Notices of Repossession invalid pursuant to the contractual and statutory requirements of Title 12, Subtitle 10 of the Maryland Commercial Code. Further, [p]laintiffs ask the [c]ourt to declare that, for cars repossessed by FMCC which are stored for sale by BWAE in Elkridge, Maryland, FMCC is contractually and statutorily obligated to issue notices of repossession that list the exact location of

---

was denied on February 21, 2001. The complaint here at issue, however, does not mention that the motion was denied.

the car and place of sale as 7141 Brookdale Drive in Elkridge, Maryland.

Plaintiffs further seek an injunctive order permanently requiring FMCC to comply with its contracts and with the referenced statute by issuing Notices of Repossession which accurately list the location of the repossessed property and place of sale. Plaintiffs also seek to enjoin FMCC from prosecuting actions against them for deficiency judgments where the Notices of Repossession are inaccurate as to location for storage and sale of the car.

*Finally, under Count I, [p]laintiffs seek an order voiding all judgments obtained by FMCC against the named plaintiffs and all* class members during the past four years to the extent such judgments are not yet satisfied or have been satisfied in the six months preceding the filing of their complaint. *Plaintiffs seek a concomitant order of restitution of all funds collected as a result of such judgments plus pre-judgment interest.*

Count II alleges that FMCC is liable for fraud for sending out Notices of Repossession that are purported to comply with contractual and statutory provisions where the [p]laintiffs "have no practical way to know" of the alleged deficiencies. Plaintiffs allege that because the Notices of Repossession sent to them were defective, FMCC could not obtain deficiency judgments if it revealed the deficiencies. Plaintiffs further allege that by representing to [p]laintiffs and the courts that the Notices of Repossession were proper, FMCC committed fraud, which led to consent or uncontested judgments. Count II also states that in failing to issue proper notices, FMCC also fails by definition, to conduct commercially reasonable sales of the cars.... [Plaintiffs' prayer for relief as to Count II read:

[P]laintiffs seek judgment against FMCC on behalf of themselves and the class herein, for all sums paid by them to FMCC pursuant to judgments obtained by FMCC, plus pre-judgment interest, to the extent such judgments have been obtained and/or any payments have been made under those judgments at any time during the

four year period preceding the filing of this Complaint. Plaintiffs and the class also seek punitive damages in an amount to be determined at trial.]

Count III seeks recovery for breach of contract. Plaintiffs' claim that the financing agreement incorporates the terms of Title 12, Subtitle 10 of the Maryland Commercial Code, and any violation of the statute constitutes a breach of contract. By sending the defective Notices of Repossession, under the statute, [p]laintiffs aver that FMCC breached its contracts with them and failed to sell the automobiles in a commercially reasonable manner. Furthermore, [p]laintiffs allege that any deficiency judgments FMCC obtained against them where there is an allegedly defective Notice of Repossession also violate the contractual terms. . . . [Plaintiffs' prayer for relief as to Count III was substantively identical to that set forth as to Count II.]

Count IV alleges that FMCC had notice of the exact location of the place of storage and sale of [p]laintiffs' vehicles but the Notices of Repossession did not accurately reflect those locations. Accordingly, [p]laintiffs allege that FMCC violated § 12–1018 of the Maryland Commercial Code. . . . [Plaintffs' prayer for relief as to Count IV was as follows:

[P]laintiffs seek on behalf of themselves and all class members herein, treble damages under § 12–1018 of the Maryland Commercial Code, including three times the amount of interest, fees and other charges collected by FMCC [pursuant] to judgments that are not yet satisfied or have been satisfied during the 6 month period preceding the filing of this Complaint, plus such other and further relief as this Court may deem appropriate.]

Count V alleges that FMCC is liable under the Unfair and Deceptive Practices Act for the alleged failure to note the exact location of the repossessed autos and for the alleged failure to accurately state the amounts they would be assessed for repossession and resale fees. . . . [Plaintiffs' prayer for relief as to Count V was substantively the same as for Counts II and III.]

Count VI, added [to] the amended complaint, alleges that FMCC, as a collector, regularly violates § 14–202 of the Maryland Consumer Debt Collections Act ("MCDCA"). That count alleges that FMCC claims, attempts or threatens to enforce a right with knowledge that the right does not exist whenever FMCC pursues or has pursued a collection action and claimed full compliance with the consumers' contracts and applicable Maryland law, knowing FMCC is or was not in compliance. [Plaintiffs' prayer for relief as to Count VI was as follows:

[P]laintiffs seek judgment on behalf of themselves and all class members herein against FMCC for the four year period preceding the filing of this Complaint, for all amounts collected by it pursuant to the notices of repossession described herein, plus prejudgment interest, plus an award of their attorneys' fees, plus emotional distress and mental anguish as permitted by Md. Comm.Code § 14–203, plus such other and further relief as this Court may deem appropriate.]

Count VII, also added in the amended complaint, states that Thiebolt, Ryan, Miller & Hrehorovich, P.A., acted as counsel for defendant FMCC in collection matters. Plaintiffs claim that TRMH is a collector and the plaintiffs and the class are persons as defined under the MCDCA. Plaintiffs allege that, as a collector, TRMH also regularly violates § 14–202 of the MCDCA by knowingly, falsely pleading that Ford sent repossession notices that comply with the statutory requirement to state the location and place of sale of the cars. [Plaintiffs' prayer for relief as to Count VII was substantively the same as in Count VI.]

(Emphasis added.)

## II. *QUESTIONS PRESENTED*

1. Did the [c]ircuit [c]ourt err in ruling that a consent judgment in a[D]istrict [C]ourt deficiency action, allegedly obtained by a fraud on the court, should be given *res judicata* effect in a later [c]ircuit [c]ourt action challenging that fraud? . . . .

2. Did the [c]ircuit [c]ourt err in giving preclusive effect to [a][D]istrict [C]ourt judgment[] [even though] the [D]istrict [C]ourt[] lacked the authority to grant [such a judgment], particularly where the statute creating one of the causes of action in this case specifically contemplates collateral attack on such judgments in appropriate circumstances?....

3. Did the [c]ircuit [c]ourt err in ruling that a plaintiff's prosecution of an independent claim under the Maryland Consumer Debt Collection Act ["MCDCA") is barred where the creditor has obtained a deficiency judgment on the debt in question?....

4. Did the [c]ircuit [c]ourt err in dismissing independent MCDCA claims on the basis of *res judicata* in favor of a party in this case who was neither a party to, nor in privity with a party to, the earlier [D]istrict [C]ourt deficiency actions?....

### III. *ANALYSIS*

#### A. *The First Five Counts in the Amended Complaint (Issues 1 and 2)*

Financing contracts, such as the one entered into by Ms. Green, are governed by the CLEC, which is set forth in Title 12, Subtitle 10, of the Commercial Law Article of the Maryland Code. *See Biggus v. Ford Motor Credit Co.,* 328 Md. 188, 202, 613 A.2d 986 (1992). The CLEC permits creditors, such as FMCC, some flexibility as to where the repossessed items are to be stored and sold but imposes strict notice requirements and strict enforcement mechanisms in connection with the sale and storage of repossessed items. *See* CL § 12–1018. As Ms. Green correctly asserts in her complaint, CL section 12–1021(e)(3) requires that notices of repossession and resale must contain the "exact location" where the car is stored, and CL section 12–1021(j)(1)(ii) requires accurate information about the "time and place of sale."

The first five counts of the complaint were all based upon one major premise, i.e., that the consent judgment obtained in

the District Court for Baltimore City against Ms. Green was obtained due to "fraud on the court." The alleged fraud was that FMCC said in its District Court statement of claim that "it had complied with all of the terms of the financing contract at issue including, by implication, the CLEC notice requirements incorporated into Ms. Green's contract. As appellants acknowledge, the first five counts, at their core, "challenge[] FMCC's entitlement to the judgments it obtain[ed] in [D]istrict [C]ourt, whether by consent, default or otherwise." Put another way, Counts I–V, inclusive, constitute an attack on the District Court judgment obtained by FMCC against Ms. Green. This is shown by the fact that Ms. Green asked for (1) an order "voiding" the District Court judgment and giving her "restitution" for all amounts paid pursuant to the judgment (Count I); (2) a judgment in the amount of all sums she paid pursuant to the judgment, plus pre-judgment interest (Counts II and III); (3) three times the amount of all interest, fees, and costs collected pursuant to the District Court judgment (Count IV); and (4) all amounts collected as a result of the District Court judgment, plus pre-judgment interest and attorney's fees (Count V).

FMCC argues that the trial court correctly dismissed the first five counts of the complaint based on the doctrine of *res judicata*, which is often referred to as "claim preclusion."

In *Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 392, 761 A.2d 899 (2000), the Court said:

> Under Maryland Law, the requirements of *res judicata* or claim preclusion are: 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits. Therefore, a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit. To avoid the vagaries of res judicata's preclusive effect, a party*

*must assert all the legal theories he wishes to in his initial action, because failure to do so does not deprive the ensuing judgment of its effect as res judicata.* As can be seen, *res judicata* looks to the final judgment on the merits earlier entered in the same case *or same cause* and to the necessary legal consequences of that judgment.

*Id.* at 392, 761 A.2d 899 (citations omitted).

■ For *res judicata* purposes, a "final judgment on the merits means" a *valid* final judgment by a court of competent jurisdiction. *FWB Bank v. Richman*, 354 Md. 472, 492, 731 A.2d 916 (1999).

The Court of Appeals, in *Rowland v. Harrison*, 320 Md. 223, 232, 577 A.2d 51 (1990), adopted the position taken by the Restatement (Second) of Judgments (the "Restatement"), section 22 (1982), which reads:

(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) *The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.*

(Emphasis added.)

The exception set forth in section 22(2)(b) of the Restatement is explained in comment (*f*), which, in relevant part, reads:

*f. Special circumstances under which failure to interpose a counterclaim will operate as a bar.* Normally, in the absence of a compulsory counterclaim statute or rule of

court, the defendant has a choice as to whether or not he will pursue his counterclaim in the action brought against him by the plaintiff. There are occasions, however, when allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. This need is recognized in Subsection (2)(b).

For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that *the facts constituting a defense also form the basis of the counterclaim. The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment* (see Illustration 9), or by depriving the plaintiff in the first action of property rights vested in him under the first judgment (see Illustration 10). Ordinarily the conclusion that the subsequent action could not be maintained under Subsection (2)(b) would not be reached unless the prior action had eventuated in a judgment for plaintiff since only in such a case would there be the threat of nullification of the judgment or of impairment of rights to which the Subsection is addressed.

(Emphasis added.)

Section 22(2)(b) and comment *f* of the Restatement were discussed in depth in *Fairfax Savings F.S.B. v. Kris Jen Ltd.*, 338 Md. 1, 22–31, 655 A.2d 1265 (1995). In the *Kris Jen Ltd.* case, a lender instituted a foreclosure action due to a debtor's failure to pay a note. *Id.* at 4–5, 655 A.2d 1265. The debtor (Kris Jen) filed exceptions to the sale, which were later withdrawn. *Id.* at 5, 655 A.2d 1265. The sale was subsequently ratified. *Id.*

Kris Jen then filed a ten-count complaint against the lender, in which it, *inter alia*, asserted that various actions by the lender induced the mortgage foreclosure. *Id.* at 6–7, 655 A.2d

1265. The trial judge ruled that, by virtue of the doctrine of *res judicata*, the following facts were not in dispute:

> (1) there was a default, (2) on which Fairfax was entitled to act, and (3) did so appropriately by foreclosure sale, (4) at an appropriate price, with the result (5) that Plaintiffs lost any right to redeem the property.

*Id.* at 10, 655 A.2d 1265. Because Kris Jen would not amend its complaint so as to recognize the preclusive effect of the judgment ratifying the sale, the second suit was dismissed. *Id.* at 9, 655 A.2d 1265. In the *Kris Jen* case, Judge Rodowsky, for the Court, said:

> [I]n the instant matter, a foreclosure-triggering default *is a condition precedent to a Maryland mortgage foreclosure.* Rule W72.a. Ordinarily the existence of that essential will be demonstrated by the statement of mortgage debt and by the mortgage that are required to accompany the order to docket the summary proceeding. Rule W72.c.1 and d. Allegations that there was no foreclosure-triggering default *negate, contradict, and in that sense nullify an essential foundation for the foreclosure judgment.* Those allegations were precluded by the foreclosure judgment, and the circuit court correctly ruled that they should be culled from Plaintiffs' second amended complaint.
>
> We emphasized that the above holding is not intended to express the full range of the § 22(2)(b) exception to the general rule of non-preclusion. It is sufficient simply to note that the above holding is distinguishable in at least one substantial respect from *Rowland.* A veterinarian suing on an implied contract to pay the reasonable value of services rendered under an expectation of payment need not allege and prove that there was no malpractice. The burden is on the plaintiff in the malpractice action to prove negligence. *See Kennelly v. Burgess*, 337 Md. 562, 654 A.2d 1335 (1995).

*Id.* at 31–32, 655 A.2d 1265 (emphasis added).

In the case at bar, the exception set forth in section 22(2)(b) of the Restatement would plainly appear to be applicable in regard to Counts I–V. Appellants ask the Court to void the

District Court judgment (Count I) and/or for restitution of monies paid as a result of that judgment (Counts II–V). A condition precedent to obtaining the District Court judgment was the allegation that FMCC had given proper notice of sale. Allegations in Counts I–V that the notice was improper, if proven to be true, would "negate, contradict, and in that sense nullify an essential foundation" for the District Court judgment. *Id.* at 31, 655 A.2d 1265.

Ms. Green takes exception to the above analysis. While she tacitly admits that a *valid* District Court judgment would preclude her from bringing Counts I–V, she asserts that no *valid* judgment was entered against her in the District Court. According to Ms. Green, the prior judgment was invalid because (1) the judgment was obtained due to extrinsic fraud; (2) the District Court had no authority to enter the judgment, and therefore entry of the judgment was due to "mistake or irregularity"; and (3) usual principles of *res judicata* are here inapplicable because CL section 12–1019 specifically authorizes claims of the sort set forth in Counts I–V.

### B. *Extrinsic Fraud*

In order to set aside an enrolled judgment due to "fraud," extrinsic fraud must be alleged and proven and not fraud, which is merely "intrinsic to the trial itself." *Hresko v. Hresko*, 83 Md.App. 228, 231, 574 A.2d 24 (1990). Ms. Green contends that in her complaint she alleged facts sufficient to demonstrate extrinsic fraud on the part of FMCC. She maintains that "[t]he fraud consisted of FMCC's pleading and reliance upon the averment in its [D]istrict [C]ourt complaint[] that it had complied with all of the terms of the financing contract[] at issue."

The term fraud, mistake, and irregularity, as used in Rule 2–535 and its predecessor, Rule 625a, have been thoroughly defined by our cases. It is evident from these decisions that those terms are to be narrowly defined and strictly applied.

... In *Hresko v. Hresko,* 83 Md.App. 228, 232, 574 A.2d 24 (1990), the Court of Special Appeals clearly distinguished intrinsic and extrinsic fraud:

"Intrinsic fraud is defined as '[t]hat which pertains to issues involved in the original action or where acts constituting fraud were, or could have been, litigated therein.' Extrinsic fraud, on the other hand, is '[f]raud which is collateral to the issues tried in the case where the judgment is rendered.'

"Fraud is extrinsic when it actually prevents an adversarial trial. In determining whether or not extrinsic fraud exists, the question is not whether the fraud operated to cause the trier of fact to reach an unjust conclusion, but whether the fraud prevented the actual dispute from being submitted to the fact finder at all." (quoting in part *Black's Law Dictionary* (5th ed.1979)).

*See also Schwartz [v. Merchants Mort. Co.], supra,* 272 Md. [305,] 309, 322 A.2d 544 [ (1974) ]("fraud is extrinsic when it actually prevents an adversarial trial, but is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear").

In *Schwartz, supra,* 272 Md. at 308, 322 A.2d 544, we provided examples of intrinsic fraud which will not trigger a court's revisory power: "an enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are 'intrinsic' to the trial of the case itself." We also discussed examples of extrinsic fraud which will permit a court to revise an enrolled judgment:

" 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his

client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.' "

*Id.* at 309, 322 A.2d 544 (quoting *United States v. Throckmorton,* 98 U.S. 61, 65–66, 25 L.Ed. 93 (1878)).

*Tandra S. v. Tyrone W.,* 336 Md. 303, 315–17, 648 A.2d 439 (1994)(some citations omitted).

■ Under Maryland law, it is clear that making an intentionally false statement in a complaint would not constitute extrinsic fraud and that proof of such fraud will not suffice to set aside an enrolled judgment. *See Tandra S.,* 336 Md. at 319, 648 A.2d 439.

The *Tandra S.* case provides a useful illustration of a case that terminated in a harsh result because only intrinsic fraud was demonstrated. Tandra S. gave birth to T.W., a baby girl. *Id.* at 306, 648 A.2d 439. On October 19, 1990, Tyrone W. signed a paternity agreement in which he, *inter alia,* acknowledged that he was T.W.'s father and agreed to pay child support. *Id.* One week after the agreement was signed, Tandra S. filed a paternity complaint in the circuit court in which she alleged that Tyrone W. was the father of T.W. *Id.* Pursuant to a provision in the paternity agreement, the court entered a "Paternity Declaration," which established Tyrone W.'s paternity of T.W. *Id.*

Approximately two and one-half years later, Tyrone W. filed a motion to set aside the Paternity Declaration. *Id.* at 307, 648 A.2d 439. He alleged that Tandra S. had recently informed him that he was not T.W.'s father. *Id.* Subsequent blood tests confirmed that he was not genetically linked to T.W. *Id.* The trial court granted Tyrone W.'s motion on the ground that it would be "unjust" to enforce the earlier judgment. *Id.* at 308, 648 A.2d 439.

The Court of Appeals reversed, saying:

*[Tandra S's] statement in the original paternity complaint that Tyrone was the father was obviously intrinsic to the proceeding, see Schwartz, supra,* 272 Md. at 308, 322 A.2d 544, which does not implicate a court's revisory power under Rule 2–535(b). Extrinsic fraud, of course, entitles a party to have an enrolled judgment set aside, but Tyrone was not the subject of extrinsic fraud. He was not prevented from having a full adversarial proceeding in the original paternity action. It was his choice to sign the paternity agreement in 1990 and there is nothing in the record which indicates that he signed this document under any coercion or duress. Consequently, Tyrone is bound by his actions in 1990 and, more specifically, he is bound by the 1990 judgment.

*Id.* at 319–20, 648 A.2d 439 (emphasis added).

Similar to the situation in *Tandra S.,* the fraud alleged here is based on a claimed misrepresentation in a court pleading (the District Court Statement of Claim); no coercion or duress is alleged to have caused Ms. Green to sign the consent decree and nothing prevented her from having a full adversarial proceeding in the original District Court debt-collection suit.

■ Ms. Green asks us to apply the definition of extrinsic fraud set forth in the comments to section 70, Restatement (Second) Judgments,[4] at page 181, *viz:*

In its core meaning, "extrinsic" fraud meant fraud that induced a party to default or to consent to judgment against him....

The breath of the above definition of extrinsic fraud cannot be accepted because it differs materially from the definition of extrinsic fraud used by the Court of Appeals in the *Tandra S.* case. *See* 336 Md. at 316, 648 A.2d 439. In fact, if the section

---

4. According to Ms. Green, the Court of Appeals, in *Travelers Ins. Co. v. Godsey,* 260 Md. 669, 273 A.2d 431 (1971), adopted an approach "consistent with ... [that] taken by the Restatement (Second) of Judgments when it held that fraud in the inducement will serve to void a consent judgment." The *Godsey* case did not so hold. In fact, the *Godsey* case did not even concern an attempt to set aside an enrolled judgment. *See Godsey,* 260 Md. at 669, 273 A.2d 431.

70 definition of the Restatement had been used, it appears likely that the outcome of the *Tandra S.* case would have been different.

We therefore hold that Ms. Green failed to allege in the first five counts of her complaint facts sufficient to demonstrate that the consent judgment was obtained by extrinsic fraud.

### C. *Mistake or Irregularity*

■ Ms. Green contends that the District Court judgment was tainted by "mistake or irregularity" because the District Court (purportedly) did not "have the ability to enter the judgment in the first place."

Appellants argue:

Where a court does not have the authority to enter a judgment, that judgment may be attacked as stemming from a mistake or irregularity. *See* Md. Cts. & Jud. Proc. § 6–408.[5]

Appellants then argue that because FMCC was not "entitled to a judgment, due to its failure to give proper notice," the District Court had no "authority" to enter that judgment. Ms. Green cites three Maryland cases and one District of Columbia case for this proposition, but none deals with an attempt to set aside an enrolled judgment. The cases are therefore inapposite.

■ Under Maryland law, an enrolled judgment can be set aside for mistake or irregularity. Mistake is limited, however, to jurisdictional error, such as where the Court lacks the power to enter judgment. *Claibourne v. Willis,* 347 Md. 684,

---

5. Section 6-408 of the Courts & Judicial Proceedings Article of the Maryland Code (1973, 2002 Repl.Vol.) provides:

**Revisory power of court over judgment.**

For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

692, 702 A.2d 293 (1997). Here, the District Court indisputably had personal jurisdiction over Ms. Green when it entered the consent judgment against her. Likewise, the Court had subject matter jurisdiction to enter the deficiency judgment. The failure on FMCC's part to give proper notice simply provided Ms. Green with a good substantive defense to the lawsuit; it did not provide her with a valid basis to claim that the District Court lacked jurisdiction to decide the issue of whether a proper notice had been given.

### D. *CL section 12–1019*

CL section 12–1019 provides: "An action for violation of this subtitle may not be brought more than 6 months after the loan is satisfied."

Appellants assert that CL section 12–1019 "contemplates" attacks on enrolled judgments based on fraud or irregularity. It does not appear that this last assertion is true inasmuch as the statute does not even mention enrolled judgments. Moreover, we can see nothing in the legislative history to support appellants' assertion. In any event, even if the statute (which on its face appears to simply set forth a condition precedent to suit) did intend to allow attacks on enrolled judgments based on fraud or mistake, this would not help Ms. Green because she has failed to plead facts sufficient to show "irregularity" or the type of fraud that must be pleaded to set aside enrolled judgments.

### E. *Conclusion as to Counts I–V*

Contrary to appellants' contentions, the judgment that Ms. Green seeks to have set aside was valid. The facts alleged in Counts I–V are insufficient to show fraud, mistake, or irregularity in connection with obtaining the consent judgment. And allowing Ms. Green to succeed as to those counts would "nullify ... an essential foundation" for the District Court consent judgment. Thus, Judge Schwait did not err in dismissing the first five counts of the amended complaint.

## IV.

**Did the doctrine of *res judicata bar* Ms. Green's claim against FMCC for its alleged violation of the MCDCA? (Count VI.)**

 In Count VI, Ms. Green sued FMCC only. She asserts that the court wrongfully dismissed Count VI on the grounds of *res judicata* because the second element of *res judicata* was not present inasmuch as "the claim presented in the current action is [not] identical to the one determined in the prior adjudication." *Colandrea, supra,* 361 Md. at 392, 761 A.2d 899.

CL section 14–202, which is part of the MCDCA, reads, in pertinent part:

§ 14–202. **Certain acts prohibited.**

In collecting or attempting to collect an alleged debt a collector may not:

\* \* \*

(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist. . . .

 In Maryland, proof of two elements are required to state a claim for a deficiency judgment: (1) an agreement that provides for a deficiency judgment and (2) compliance with the applicable statute. *Scott v. Ford Motor Credit Co.,* 345 Md. 251, 255, 691 A.2d 1320 (1997).

Ms. Green asserted in Count VI that FMCC violated CL section 14–202 when it enforced a right to a deficiency judgment, even though FMCC knew it had no right to collect on that judgment because its notice was defective.

Ms. Green admits that in order to show entitlement to a deficiency judgment against her FMCC had to represent to the District Court that it had complied with the notice requirements set forth in CL section 12–1021(K)(4). FMCC did make such a representation. But because a consent judgment was entered, the issue of whether the requisite notice was given was never litigated. Ms. Green, nevertheless, could

have litigated that issue in the District Court. And, if what she now alleges in the amended complaint is true, she would have won the District Court action had the issue been litigated. Under such circumstances, the doctrine of *res judicata* bars her from now claiming that FMCC gave defective notice. The prior judgment was "conclusive, not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit.*" *Colandrea*, 361 Md. at 392, 761 A.2d 899.

More than a century ago, the Supreme Court of the United States said:

[A judgment on the merits] is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. *Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered,* such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence.

*Cromwell v. County of Sac.*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)(emphasis added).

The issue here presented is closely analogous to the issues under discussion in *Fairfax Savings, F.S.B. v. Kris Gen Ltd.*, discussed *supra*. In *Kris Jen*, it was held that the plaintiff was barred from controverting in a second suit what had been established in a prior suit as a condition precedent to recover, i.e., that there was a loan default upon which the bank acted appropriately when it foreclosed on the plaintiff's property. 338 Md. at 14, 31, 655 A.2d 1265. Here, the prohibited claim practice about which Ms. Green complains in Count VI is that FMCC falsely said in the statement of claim filed in the

District Court that FMCC had provided Ms. Green with a notice that complied with the CLEC. As mentioned above, FMCC could not have obtained the District Court judgment if that statement was found to be untrue. In other words, proper notice was a condition precedent to recovery in the District Court. To allow Ms. Green to now prove that the notice FMCC gave was defective would, under the rule set forth in section 22(2)(b) of the Restatement, "negate . . . [and] contradict" an essential element of the District Court judgment.

The facts presented in the subject case are analogous to those in *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir.1986). The Henrys were the beneficial owners of property, which was held by a land trust. *Id.* at 1230. To secure the payment of loans made by the Farmer City State Bank ("the Bank"), two mortgages were placed on the property. *Id.* The Henrys defaulted on the loans, and the bank instituted foreclosure proceedings and sold the property at a public sale. *Id.* The Henrys "moved to set aside the sale on the ground that . . . [Mr.] Henry failed to receive notice of the sale." *Id.* at 1230–31. The trial court nevertheless confirmed the sale. *Id.* at 1231. The Henrys appealed to the Illinois intermediate appellate court, but the judgment of the trial court was affirmed. *Id.*

The Henrys then filed a complaint in federal court, alleging RICO (Racketeer Influenced and Corrupt Organizations Act) violations by the Bank and others. *Id.* In their amended complaint, the Henrys asserted that one of the mortgages was forged "and that the underlying obligation to the Bank was unlawful." *Id.* The United States Court of Appeals for the 7th Circuit, applying the law as enunciated in Restatement (Second) Judgments, section 22(b)(2) of the Restatement, ruled that the RICO claim was barred by *res judicata*. *Id.* at 1232–37. The *Henry* court observed that the applicable federal law in this regard was set forth in *Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926 (7th Cir.1986).

In *Rudell* [the Court held] that the doctrine of res judicata bars a party from subsequently raising *claims based on*

*facts which could have constituted a defense or* counterclaim to a prior proceeding if the "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Id.* at 928 (quoting Restatement (Second) of Judgments § 22(2)(b)). Although recognizing that in most instances a defendant's failure to raise a defense or a counterclaim in a prior action will not bar him from raising a related claim in a subsequent proceeding, we nevertheless observed:

> Both precedent and policy require that res judicata bar a counterclaim when its prosecution would nullify rights established by the prior action. Judicial economy is not the only basis for the doctrine of res judicata. Res judicata also preserves the integrity of judgments and protects those who rely on them.

*Id.* (quoting *Martino v. McDonald's System, Inc.,* 598 F.2d 1079, 1085 (7th Cir.1979), certiorari denied, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379[) ].

*Id.* at 1232–33 (emphasis added).

The *Henry* Court went on to demonstrate that the *res judicata* law as applied in Illinois produced the same result as did federal precedent. *Id.* at 1234. The *Henry* court said:

> At no time during the course of the state court mortgage foreclosure proceedings did the Henrys ever suggest that the second mortgage was a forgery or procured through fraud or that the underlying debt of $345,000 was unlawful. The Henrys raised a number of issues in their motion to vacate the judgments in the circuit court and on appeal to the Illinois appellate court, but fraud and forgery were not among them. *To allow the Henrys now to raise their fraud claims to challenge the validity of the second mortgage and thereby establish a RICO violation would clearly undermine the judgments of foreclosure entered against the Henrys by the Illinois circuit court and affirmed on appeal.*
>
> *An examination of the amended complaint reveals that the Henrys are seeking to relitigate a claim, namely the validity of the second mortgage, which has already been*

*definitively resolved.* The Henrys' allegations of fraud and forgery, if substantiated, would have been a complete defense to the foreclosure proceedings. *Dunlap v. Peirce,* 336 Ill. 178, 168 N.E. 277 (1929). Having failed to raise those allegations before the state court, the Henrys cannot attack the state court judgments by subsequently filing RICO claims based on the same facts in federal court. *Furthermore, if the Henrys were to recover the damages they seek, the deficiency judgments awarded Farmer City State Bank would be rendered meaningless.* Even more troublesome, the Henrys seek to have the second mortgage and the promissory note evidencing the underlying $345,000 debt cancelled and their enforcement and collection enjoined, despite the fact that the encumbered property was sold to the Bank at a foreclosure sale on November 28, 1983, directly pursuant to the foreclosure judgments entered by the Illinois circuit court. Because the Henrys' RICO claims could impair the rights established in the state court mortgage foreclosure proceedings, we hold that they are barred by the doctrine of *res judicata.*

*Id.* at 1235–36 (emphasis added).

Stripped of all rhetoric, in Count VI Ms. Green seeks to relitigate the issue of whether she owed FMCC the monies recovered by it as a result of the consent judgment. In Count VI, it is alleged that Ms. Green was defrauded into paying the judgment due to FMCC's false representation in its pleading that it had given proper notification. To allow appellants to prove that fraud claim "would clearly undermine" the consent judgment entered against Ms. Green. *Henry,* 808 F.2d at 1235.

Appellants argue: "The [D]istrict [C]ourt deficiency action on which the appellees' claim of *res judicata* depends encompasses only those issues that arose out of debts themselves. At no time were [a]ppellees' debt collection practices at issue." Appellants are wrong when they say that the District Court action against Ms. Green "encompassed only those issues that

arose out of the debts themselves." *See Scott,* 345 Md. at 255, 691 A.2d 1320. Under the CLEC, FMCC would have had no right to collect any deficiency judgment if, as alleged, it routinely sent invalid notices or if their notice was otherwise improper. *Id.* Thus, FMCC's "debt collection practices" were at issue (or could have been at issue in the District Court) because proper notice was a condition precedent to recovery. In short, the "same evidence" that would prove Count VI would also present a valid defense to the District Court action. Just as the plaintiffs in *Henry* were barred from proving forgery of a note in a second suit based on the RICO statute after a final judgment concerning that note had been entered in an earlier suit, Ms. Green is barred from bringing a MCDCA claim against FMCC, alleging a defective notice when, in a prior suit, she failed to raise the defective notice issue.

Appellants rely on three federal cases in support of their contention that Count VI is not barred by *res judicata,* i.e., *Azar v. Hayter,* 874 F.Supp. 1314 (N.D.Fla.1995); *Whitaker v. Ameritech Corp.,* 129 F.3d 952 (7th Cir.1997); *Berrios v. Sprint Corp.,* 1998 WL 199842, at *8–9, 1998 U.S. Dist. LEXIS 6579, at *26 (E.D.N.Y. Mar. 16, 1998). These cases all concern the federal Fair Debt Collection Practices Act ("FDCPA") and are inapposite.

The FDCPA claim at issue in *Azar* arose under 15 U.S.C. section 1629(g). 874 F.Supp. at 1317. The section 1629(g) provisions at issue were summed up in *Azar* as follows:

[S]ection [1692(g)] requires a "debt collector" to send a written notice of the debt either with its initial communication or within five days thereof to the debtor. The written notice must contain the debt amount, the creditor's name, a statement that if the consumer does not dispute the debt within 30 days it will be presumed valid, and a statement that if written notice is provided that the debt is disputed, the debt collector will obtain verification of the debt or a copy of the judgment. § 1692g(a)(1)-(4). Collection of the

disputed debt must cease until [the] debt collector obtains verification or a copy of the judgment and mails it to the consumer. § 1692g(b). No provision of the FDCPA has been found which would require a debt collector independently to investigate the merit of the debt, except to obtain verification, or to investigate the accounting principles of the creditor, or to keep detailed files.

*Id.*

Si Azar was an owner of a condominium unit managed by the Peckwick Park Condominium Association ("Peckwick"). *Id.* at 1316. Peckwick and its agent, Alliance Realty Services, Inc., sent Azar a letter asserting that Azar owed Peckwick $4,025 for unpaid condominium fees and late charges. *Id.* The letter also made an implied demand for payment. *Id.* When payment was not made, Peckwick, by its attorney, Hayter, sued Azar in state court to collect the condominium fees allegedly owed. *Id.* Azar filed a counterclaim against Peckwick, claiming "that the allegations against him 'were based on an unacceptable accounting practices and [were] not credible.'" *Id.* The counterclaim was unsuccessful. *Id.*

Azar then brought a claim under the FDCPA against Peckwick, Hayter, Alliance Realty, and others. *Id.* at 1317. The defendants contended that Azar's FDCPA claim was barred by *res judicata*. *Id.* The *Azar* court rejected that argument, saying: [6]

Hayter's argument that [p]laintiff is barred by *res judicata* is unpersuasive. The case cited by Defendant Hayter stands for the proposition that a failure to assert a compulsory counterclaim, which is a claim against an opposing party arising out of the same transaction or occurrence which is the subject of the opposing party's claim, results in

---

**6.** Ultimately, the FDCPA claim was rejected because the obligation sought to be collected was not a "debt" as defined in the FDCPA; moreover, none of the defendants were "debt collectors" as defined under the Act. *Id.* at 1321–22, 273 A.2d 431.

waiver or estoppel. Plaintiff's *FDCPA claim has nothing to do with whether the underlying debt is valid.* An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt, and thus was not a compulsory counterclaim under state law in the action to collect the debt.

*Id.* (emphasis added).

Neither the language used in *Azar* nor its holding[7] helps Ms. Green's case. Under federal law, collection practices prohibited by the FDCPA have no effect on whether a debt is owed. But here, the "bad" collection practice complained about (giving a defective notice) would invalidate the debt. Unlike the *Azar* case, Ms. Green's MCDCA claim directly impacted upon the issue of "whether the underlying debt" was valid. *Id.*

We hold that the trial court properly dismissed Count VI based on *res judicata.* The allegations of fraud set forth in Count VI go to the heart of what was a condition precedent to recovery in the District Court, i.e., that Ms. Green owed FMCC the amount set forth in the judgment. A successful MCDCA action based on fraud would have the effect of contradicting the judgment entered in the District Court.

---

7. The rule adopted in *Azar* appears to have been universally adopted. In *Berrios v. Sprint,* 1998 WL 199842, at *9, 1998 U.S. Dist. LEXIS 6579, at *26, the court said:

All reported decisions on the issue have found that a defendant's counterclaims for payment of an overdue debt are distinct from, and not logically related to, a plaintiff's FDCPA claim based on improper debt collection practices. *See Peterson v. United Accounts[,] Inc.,* 638 F.2d 1134, 1137 (8th Cir.1981); *Blakemore v. Pekay,* 895 F.Supp. 972, 983–84 (N.D.Ill.1995); *Azar v. Hayter,* 874 F.Supp. 1314, 1317 (N.D.Fla.1995); *Hart v. Clayton–Parker & Assoc.,* 869 F.Supp. 774, 777–78 (D.Ariz.1994); *Leatherwood v. Universal Bus. Serv. Co.,* 115 F.R.D. 48, 49–50 (W.D.N.Y.1987); *Lawson v. Management Adjustment Bureau Inc.,* 1997 WL 283027, at *6, 1997 U.S. Dist. LEXIS 7275 (N.D.Ill. May 15, 1997); *Ayres v. National Credit Management Corp.,* 1991 WL 66845, at *1–4, 1991 U.S. Dist. LEXIS 5629 (E.D. Pa. April 25, 1991); *Gutshall v. Bailey & Assoc.,* 1991 WL 166963, at *2, 1991 U.S. Dist. LEXIS 12153 (N.D.Ill. Feb.11, 1991).

## V.

**Did the trial judge properly dismiss Thiebolt, Ryan as a defendant in Count VII?**

 The claim against Thiebolt, Ryan, the attorneys who represented FMCC in the District Court action, are substantively the same as those set forth in Count VI. Appellants reiterated the same arguments against Thiebolt, Ryan as they made against FMCC in regard to Count VI, but in addition, they claim that *res judicata* is inapplicable as to Thiebolt, Ryan because that firm was (purportedly) neither a party nor in privity to a party involved in the District Court law suit. As Judge Wilner said for this Court in *Klein v. Whitehead,* 40 Md.App. 1, 389 A.2d 374 (1978), the requirement that one who invokes *res judicata* and/or collateral estoppel be a party or in privity to a party has been relaxed and would not bar estoppel by judgment (i.e., the bar of either *res judicata* or collateral estoppel) if all the other elements of those doctrines were proven. *Id.* at 15, 17–18, 389 A.2d 374 (citing *MPC., Inc. v. Kenny,* 279 Md. 29, 34–36, 367 A.2d 486 (1977).

In *Klein,* a lawyer and his firm were sued along with the firm's client. *Id.* at 8–9, 11, 389 A.2d 374. The plaintiff in *Klein* (a trustee in bankruptcy for Charles Parsons and his wife) sued the lawyer, the lawyer's firm, and his client (the "Drydens") for instituting and proceeding with four previous lawsuits. *Id.* at 8–11, 389 A.2d 374. The bankruptcy trustee sought damages against the defendants for damages arising from the successful prosecution of the earlier lawsuits. *Id.* at 11, 389 A.2d 374. Judge Wilner, for this Court, said that the lawyer and his law firm met the "identity of parties" requirement for the application of *res judicata.* *Id.* at 17–18, 389 A.2d 374. Based on *Klein,* we hold that Thiebolt, Ryan also met the identity of interest requirement and that *res judicata* barred Ms. Green's suit against the firm, just as it barred the claim set forth in Count VI against FMCC.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**